## MADISON TEAT v. THE STATE.

1. CRIMINAL LAW.  *Former jeopardy.*
    T. was indicted in one indictment for the murder of G., and in another
    for the murder of W.  He was arraigned and put on trial upon the
    first indictment, but by accident during the trial the latter supplanted
    the former, was taken out by the jury, and on it they brought in a
    verdict of guilty; so that while the arraignment and earlier entries
    of the trial were on the indictment for the murder of G., the verdict,
    judgment and later entries were on the one for the murder of W.
    The conviction having been set aside, and both indictments quashed,
    *held*, that T. had been legally acquitted of the murder of G., and could
    not again be placed on trial therefor on a new indictment found.

2. SAME.  *Former jeopardy, what is.*
    A party is placed in jeopardy whenever, upon a valid indictment in a
    court of competent jurisdiction, and before a legally constituted jury,
    his trial has been fairly entered upon; and if thereafter the jury is
    illegally, improperly and unnecessarily discharged by the court, it
    operates as an acquittal, so that he cannot again be arraigned for the
    same offence.

3. SAME.  *Case in judgment.*
    T. and S., lying in ambush together, each armed with a double-barrelled
    shot-gun, two distinct but almost simultaneous shots were fired from
    the ambush, by which G. and W. were mortally wounded, and S. fired
    a third into the prostrate body of G.  *Held*, that the murder of G.
    was a distinct crime from that of W., and that for each of the offences
    T. might be separately tried; nor could he, on an indictment for the
    murder of W., successfully plead former jeopardy in having been
    already tried for the murder of G.

4. SAME.  *Two acts of crime provable by same testimony.*
    A putting in jeopardy for one act is no bar to a prosecution for a sepa-
    rate and distinct act, merely because they are so closely connected
    in point of time that it is impossible to separate the evidence relat-
    ing to them on the trial for one of them first had.

5. SAME.  *Two crimes by a single act.*
    *Quære*, where by a single act two crimes are committed, the authorities
    are divided as to whether a trial for one is a bar to a trial for the
    other.

6. SAME. *Indictment. Joinder of offences. Motion to compel election. Arrest of judgment.*

Two offences of the same character, though committed at different times, may be joined in the same indictment. The State, on motion, in the discretion of the court, may be compelled to elect on which to proceed. But if no motion to that effect is made, the judgment, after verdict, will not be arrested.

ERROR to the Circuit Court of Montgomery County.

Hon. ORLANDO DAVIS, Judge.

*D. A. Holman,* for the plaintiff in error, filed a printed argument, making the following points : —

I. The identity of the person and of the offence being specifically charged in the plea, is admitted by the demurrer, and the necessity of all proof thereby superseded. The record of both trials, and the bill of exceptions embodying the testimony, are identically the same.

The whole case, then, is staked upon two grounds of demurrer to the plea.

1. It does not show a former jeopardy, because it does not show a verdict of former acquittal or conviction.

2. It is not responsive to the whole indictment.

There are two theories held by the American adjudications upon former jeopardy : —

1. That there is no jeopardy until after the rendition of verdict by a jury for or against the prisoner upon a valid indictment. 18 Johns. 202; 5 Littell, 140 ; *Moore* v. *State,* Walk. (Miss.) 254.

To the first rule there are many admitted exceptions ; to wit, if the jury were discharged without legal necessity and without the consent of the accused, it dispensed with the necessity of verdict rendered, and entitles the prisoner to his discharge. 9 Wheat. 579; 4 Wash. 411; Gall. 364; 18 Johns. 187; 1 Johns. 66; 6 S. & R. 577; 3 Rawle, 498; 10 Yerger (Tenn.), 539 ; 9 Mass. 494; 2 Johns. Cas. 301; 2 Pick. 525; 7 Porter (Ala.), 187; 26 Ala. 135; 2 Lead. Crim. Cas. 368.

2. That whenever a jury is empanelled, sworn and charged with the deliverance of the accused, the jeopardy was then complete, the failure to convict working by operation of law

an acquittal.   1 Coke's Inst. 227 ; 3 Coke's Inst. 100 ; 4 Black. Com. 290 ; 1 Bish. Crim. Law, § 661 ; 6 S. & R. 577 ; 20 Pick. 365 ; Freeman on Judgment, § 318 ; 2 McLean, 114 ; Mart. & Yerger, 279 ; 1 Dev. 491 ; Am. Crim. Law, 266 ; 23 Miss. 261 ; 1 Bailey, 651 ; 9 Ala. 79 ; 5 Rand. 669 ; 2 Mass. 172 ; 2 Curtis C. C. 153 ; 13 Iredell, 254 ; 3 Hawk. 613 ; 7 Black, 186 ; 16 Ala. 781 ; 5 Ind. 290 ; 23 Penn. St. 12 ; 8 Ala. 951 ; 1 Tyler, 178 ; 4 Black, 345 ; Thacher's Crim. Cas. 132–206 ; 49 Miss. 331.

The above cases also hold that there are exceptions to the last rule, by which a party upon whose trial a jury may have been empanelled, sworn and charged may not be entitled to the plea of former jeopardy, — from all which, then, we derive the two rules : —

1. That there is no jeopardy until verdict rendered and judgment thereon, unless the jury is discharged without legal necessity or the consent of the accused.

2. That the jeopardy was complete on empanelling the jury and submission of evidence, and, unless convicted, it worked an acquittal, unless some legal necessity or consent of the accused authorized the discharge of the jury.

The first rule predicates jeopardy upon the rendition of verdict, and allows it before verdict only by the exceptions. The second predicates jeopardy before verdict, and bars it only by the exceptions.   Under the first, the prisoner must show a verdict of acquittal or conviction, or bring himself under the exception by showing an illegal discharge of the jury before · verdict.   Under the second, the prisoner is only required to show the empanelling of the jury sworn and charged with his deliverance, and he is entitled to his acquittal, unless the State shows some legal necessity or consent of the prisoner to the discharge of the jury.   Tried by either, and the prisoner here is entitled to his discharge.

The demurrer will allow no exception, a " verdict of conviction or acquittal, one or the other, being essential," and plainly contradicts the authorities.

The verdict returned by the jury of conviction for the murder of William, though a nullity in itself, was by operation of law a verdict of acquittal of the murder of George, for which

he was tried, and the dispersing and discharge of the jury thereon entitled the prisoner to his discharge. 25 Miss. 380; 49 Miss. 331; *Finch* v. *State, ante,* 363; 1 Chitty Crim. Law, 640; 4 Scamm. 168; 8 S. & M. 585; 6 Humph. 410; 9 Yerger, 333.

Being entitled to his discharge for the murder of George Steen, no steps can be taken backward by the State, without his consent, and it is final, conclusive and irrevocable. Bishop Crim. Law (6th ed.), § 992; 1 Wharton Crim. Law, § 587; 5 Littell (Ky.), 140; 25 Miss. 381; 3 Rawle, 498.

II. Is it responsive to the whole indictment? In other words, does the jeopardy for the murder of George Steen entitle to discharge for the murder of William Steen?

We hold it does, because the *act of assassination* was *one transaction*, including *both killings* by *two confederates* at *the same time,* pursuant to a *common design.* The proof fails to show which Teat killed, or that he killed either, except by complicity in the *common design*, thus making it *one transaction.* Under an indictment for the murder of George Steen in 1872, the State could not show that Teat killed George Steen, except by proving the whole transaction, and showing that it was all the result of *one common design*, and that Teat was one of the parties, and was therefore responsible for the murder of George Steen, although he may have killed William, or may not have killed either, if he was there aiding and abetting in the whole act or any part of it, pursuant *to one common design.* Upon the whole proof of the whole transaction (both killings), and the same proof as was given on both trials, *in totidem verbis*, the jury in legal effect say *he was not one of the conspirators,* or *he was not there aiding and abetting in the common design that effected the death of George.* Instructed by the court that proof of the killing of either George or William, by either Teat or Scott, pursuant to a *common design*, would authorize conviction for the murder of George in 1872, the jury acquit. In 1876, upon the same proof, upon the same charge substantially (and in two counts specifically), and under the same instructions, *verbatim*, the jury tries the same prisoner, and say, in legal effect, *he was one of the confederates, he was there aiding and abetting in that common design,*

and was *liable both for the murder of George and of William Steen.*

Under every known rule of law, one verdict is a bar to the other.

1. " When the *evidence* necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first, the plea is generally good." Am. Crim. Law, 257, and authorities; *Munford* v. *State*, 39 Miss. 269; *Rocco* v. *State*, 37 Miss. 357.

2. " The plea of *autrefois acquit* or *convict* is sufficient whenever the proof shows the second case to be the *same transaction* with the first." *Roberts* v. *State*, 14 Ga. 8; *Feodler* v. *State*, 7 Humph. 508; *Duncan* v. *Com.*, 6 Dana, 295; Thacher's Crim. Cas. 206, 207; *Munford* v. *State*, *ubi supra.*

3. An acquittal or conviction under an indictment for any offence is a bar to any subsequent indictment *substantially* like the former. Freeman on Judgments, § 318; *Leslie* v. *State*, 18 Ohio, 390.

4. Justice Thacher, in *Com.* v. *Curtis*, approves the definition of Chief Justice De Grey, as to " what is meant by the same identical cause of action," as reported in *Kitchen* v. *Campbell*, 3 Wilson, 304, to be: (1.) " Where the same evidence will support both the actions." (2.) " When the defendant might have been convicted on the first indictment by the proof of the facts contained in the second." (3.) " When the proof of the facts in the first indictment will sustain the facts in the second." And, finally, to crown the whole, he says, " I consider it a true criterion of its goodness if it appear that under the first indictment the *real merits could have been tried, and he was actually in jeopardy.*" Thacher's Crim. Cas. 206.

5. " In case of felony, when one of the offences is a necessary ingredient or accompaniment of the other, and the State has selected and prosecuted it to conviction, it is said there can be no further prosecution on the other." Am. Crim. Law, 257; 1 Met. 265.

The proof shows that the same men who killed William Steen killed George Steen; that they were both killed at the same time by two men acting in concert; and while neither

can be proved to have killed either separately, yet either of the two conspirators are guilty of the murder of either or both as much so as if he alone struck the blow that killed both. Under this theory and instruction from the court the *whole proof* of the *whole conspired transaction* was submitted to the jury on trial for murder of George Steen; and their verdict, in legal effect, found that Teat *did not murder George Steen!* that he *did not conspire* with *Scott* to *murder George Steen and William Steen,* or *either of them,* and *cannot be held responsible for what Scott did!* Now, if George Steen and William Steen were killed by two conspirators, and Teat was not one of them, if the same party who killed George Steen killed William Steen, and Teat was not the man who killed George Steen, how can he be the man who killed William Steen?

Nor can it avail the State that the proof may now satisfy the court and the last jury that the first jury ought to have found him guilty. They had substantially the same proof, same instruction as to the law, and, in legal effect, acquitted by their verdict! *That verdict is final, conclusive and irreversible,* and bars any subsequent prosecution for the same offence, in whole and in every essential part. It resolves itself into an incontestable syllogism; to wit, *Whoever killed George Steen killed William Steen. Teat did not kill George Steen. Therefore he did not kill William Steen.* We are now estopped from trying him for the murder of William Steen, since that would be to say now that he did kill George Steen, notwithstanding one jury has acquitted him of that offence; and that he did participate in that common design, although one jury has said he did not, which is in direct violation of the law and the Constitution.

III. The State may divide up a crime and indict for any distinct offence included in the whole crime; but, when it does so, "if the facts alleged in one indictment must necessarily be produced in evidence" (as in proving common design, thus fixing the crime and the perpetrator), "in order to make out such a charge as that contained in the other indictment, there are not two distinct offences which are capable of being prosecuted and punished separately." 2 Lead. Crim. Cases, 556;

1 Green, 31; Bishop Crim. Law, § 536; 2 Murphy, 371; 7 Humph. 508; 2 Tyler (Vt.), 387; Hawk. (N. C.) 98; 14 Ga. 8; 1 Met. 264. And while a criminal transaction may be divisible, and a crime or offence may be composed of two or more constituent offences, yet the crime or offence, in the abstract, is indivisible. Murder is murder, and it cannot be any thing else; and though it encloses with it manslaughter, and assault and battery, and a simple assault, all of which are necessary to constitute murder, *yet the crime of murder is indivisible.* If two or more are guilty of the same murder, it is nevertheless murder as against all. If one be guilty of two or more homicides with the same blow, when the crime arises to the height and dignity of murder, it is capital, and can go no higher. Guilt is just as great in the eyes of the law, and no greater, in the felonious homicide of one man, as of many! It is murder. A conviction of it *exhausts the power and the demands of the law* for that crime by its highest possible penalty. And sentenced to this, would it not be the merest mockery to prosecute further charges? *In jeopardy, then, for the full charge* that *exhausts the punitive power* of the *State*, how can it be said that a second trial for a part of the same offence does not repeat the jeopardy?

In jeopardy, upon an integral part of the whole act of assassination, the proof of which exhausted the whole crime, and the proof of any other part of which, under the instructions, would convict of that part and acquitted, how can he be tried on any part a second time, without repeating the jeopardy? The whole proof was made essential to prove *common design*, and could not be submitted to a second jury, without violating the Constitution.

IV. The jeopardy for George Steen bars the third count in the last indictment for the murder of George Steen and William Steen. He is completely protected from any consequences flowing from that act in any sort of proceeding. 1 Bishop Criminal Law, § 658. Indicted for killing George and William, when the proof necessary to convict required a *common design to kill both;* as you cannot tell which he killed, or that he killed either, except by the conclusions of law

attaching to the conspiracy, to acquit of George necessarily discharges of the whole crime, since if not guilty of part he cannot be of the whole. If it be " one transaction," " one offence," of course it must be barred. He cannot be " tried twice for the same offence." If they are distinct and separate offences, then the count is bad for duplicity and uncertainty, and judgment must be arrested. 14 S. & M. 125. " A count in an indictment which charges two distinct offences is bad, and the defendant, on a motion to quash, or demurrer, can defeat it." American Criminal Law, 192 ; Starkie C. P. 272 ; Archbold C. P. 49 ; *State* v. *Howe*, 1 Rich. 260 ; *Com.* v. *Gable*, 7 S. & R. 423 ; *Long* v. *State*, 12 Ga. 293.

Under the well-settled rule that a demurrer reaches back to the first defect in the pleadings, the court will quash this third count, if they are two distinct offences. .

" When two or more acts connected with the same transaction, each one of which are indictable as representing a stage in the same offence, they may be coupled in the same count. Yet when both are perpetrated by the same person at the same time, they constitute but one offence, for which one count is sufficient, and for which but one penalty can be inflicted." American Criminal Law, 194 ; *Hinkle* v. *Com.*, 4 Dana, 518. Both in civil and criminal pleading, two counts charging the same thing would be bad on special demurrer for duplicity. The rule is clear, that, when two counts setting out the same offences occur, judgment will be arrested. " Neither, as we think," says Lord Denman, in *Campbell* v. *Rex*, 11 Ad. & El. N. s. 800, " can one offence, whether felonies or not, be properly charged twice over, whether with *one indictment or two ;* and as special demurrers are not necessary in criminal cases, we think that if the two counts in an indictment necessarily appear to be for the same charge, the objection might be taken in arrest of judgment." American Criminal Law, 208.

It is, then, well settled that, —

1. Two distinct offences cannot be charged in one count in the same indictment.

2. That two or more counts for the same offence cannot be charged in the same indictment.

"In cases of felony, when two or more distinct offences are contained in the same indictment, it may be quashed; or the prosecutor compelled to elect on which charge he will proceed; but such election will not be required to be made when several counts are introduced solely for the purpose of meeting the evidence, as it may transpire, the *charges being substantially the same.*" American Criminal Law, 204; *Kane* v. *People,* 9 Wend. 203; *Wright* v. *State,* 4 Humph. 194; *Weinzorpflin* v. *State,* 7 Blackf. 186.

Now, then, if the charge for the murder of George Steen and William Steen are *two distinct offences, it must be arrested.* If it is but a variation in the count to "meet the evidence as it may transpire," on the first count for George Steen, "the charges being substantially the same," then the first count being barred by former jeopardy, the latter must be also!

V. What should be done with the prisoner?

The first count for the murder of George being clearly barred, and the third count for George and William being either barred or void for duplicity, even if it is not a bar to the second count for the murder of William, the judgment must be *arrested* as a *nullity,* and the prisoner discharged, because he cannot be put in jeopardy again upon the second count for the murder of William.

The verdict and judgment is a joint and indivisible entirety for the murder of George and William. It must be enforced as it is, or cannot be enforced at all!

An indivisible part for the murder of George is barred by the Constitution. That much of it, certainly, cannot be enforced. The other, for the murder of William, cannot be enforced, because it cannot be separated, being joint and indivisible. And it cannot be good in part and bad in part.

Justice Spencer says, "It appears to me to be as absurd to uphold a conviction founded upon good and bad matter, when the punishment is awarded on both, as it would be to support a judgment at law, founded upon distinct matters, some of which were actionable, while others were not." 4 Johns. 343; Sayer, 44.

"If a conviction is illegal in prescribing a punishment

not authorized, it must, *a fortiori*, be illegal, if a court not empowered to take cognizance of the crime should, nevertheless, assume it, and punish accordingly." 6 Johns. 504. The judgment for both is a nullity, is utterly unenforceable, and entitles the prisoner to his discharge.

*G. E. Harris*, Attorney-General, for the State.

The accused pleaded *autre fois acquit*, to which a demurrer was interposed, setting up seven grounds, substantially as follows : —

1. The matters of record are set up, without setting out their legal purport.

2. The plea does not show an acquittal.

3. It shows a failure on the part of the jury to return a verdict of acquittal or conviction.

4. The plea shows a finding of a verdict of guilty of the murder of William Steen, and that it was a nullity, for want of arraignment and plea.

5. The plea shows that the former trial, finding and judgment were all void, and constitute no bar to the indictment in this case.

6. The plea does not aver that in consequence of the alteration of the record, that made it appear that the former trial was on No. 4, instead of No. 3, so reformed the record as to make the conviction appear to be regular and valid on No. 4.

7. Said plea is no answer to the whole indictment.

The demurrer was sustained, the accused pleaded "not guilty," was tried, convicted, and brings the case to this court, not for a new trial, but asks to be discharged. The assignments of error, though three in number, present but a single question : Was the plea sufficient ? The Constitution protects the citizen against a second jeopardy. "No person's life or liberty shall be twice placed in jeopardy for the same offence." Const. art. 1, § 5. In the case at bar, if the accused was twice in jeopardy, when and in what part of the record did the first set up or begin ? In the cases in our own State, cited by counsel, there is no parallel to the case at bar. See Walker (Miss.), 254 ; 33 Miss. 261 ; 36 Miss. 616 ; 39 Miss. 548. In the last cited case, it was held that a proceeding and conviction,

where the proceedings were *void* (where the penalty has not been inflicted), it is no bar to a subsequent indictment for the same offence. See also *United States* v. *Gilbert*, 2 Sumn. 38. To constitute a bar, the acquittal or the conviction must be *lawful;* if not, his life was never in jeopardy. 39 Miss. 552. The case at bar will not stand the test of such a rule. The accused had not been *lawfully* convicted or acquitted of the murder of either George or William Steen. He was tried and convicted for the murder of William Steen, but the proceedings were illegal, and the indictment was quashed in this court. If, however, he had been punished under the illegal indictment, the punishment would have been a protection against further prosecution.

To constitute a bar, there must be one of two things : 1. A *lawful* conviction or acquittal. 2. An illegal punishment.

But will this court hear a defendant who brings his case here, claiming that his conviction was *unlawful*, and the indictment *void;* and when this court has so held, and reversed it and quashed the indictment, and when he is again indicted, to set up in defence that his first conviction was *lawful*, and plead it in bar of a further prosecution ? That is what is here attempted. See Wharton on Homicide (2d ed.), § 889.

There are three counts in the indictment. Each one is for murder : 1. For killing William Steen ; 2. For killing George Steen ; 3. For killing William and George Steen, — all in the same act (as it is claimed), in the same transaction, and each count charges the same grade of offence. If this was a defect, it should have been taken advantage of, as provided in § 2805 of the Code of 1871. In fact, as they charge but one offence (as claimed), they are not repugnant. And if there is any objection to it, the proper mode was by motion to quash, or to compel the prosecutor to elect on which count he will proceed ; and this, even, is not a right, but is addressed to the sound discretion of the court. *Wash's Case*, 14 S. & M. 120 ; *Sarah's Case*, 28 Miss. 267 ; *George's Case*, 39 Miss. 570 ; *Strawhern's Case*, 37 Miss. 422.

If there be a defect in the indictment, it is not reached by the demurrer to the defendant's plea, but the Code points out

the mode of reaching it, not by plea, or by motion in arrest of judgment, but by motion to quash for defects, or, if for misjoinder of counts, by compelling the prosecutor to elect; and in the case at bar either count might have been elected with safety.

1. For the murder of William Steen, because for that he was *illegally* convicted.

2. For the murder of George Steen, because for that he was never tried.

3. For the murder of William and George Steen, because, if guilty of the murder of one, he is guilty of the murder of both.

But the plea does not show a former acquittal of either, nor does it show a conviction at all for the murder of George Steen, and but an *illegal* conviction for the murder of William Steen, as insisted by counsel, and as decided by this court; and this, I insist, is conclusive of the whole question. He was not in jeopardy by the mere act of arraignment. The jury must be empanelled and charged. Then, after the case has been submitted to them, and they are discharged without rendering a verdict, it works an acquittance. Yet it is otherwise when the term of the court is about to expire, and there is no possibility of agreement. *Josephine's Case,* 39 Miss. 613; *Wood's Case,* 43 Miss. 364; 18 Johns. 187; 2 Pick. 521; 7 Porter, 188; 4 Ala. 274; 2 Gratt. 567; 6 S. & R. 577; 3 Rawle, 498.

If the indictment was bad for duplicity, the defect should have been reached by special demurrer. 1 Bishop, § 456. See also *McLaughlin's Case,* 12 Cushing, 612; *Carleton's Case,* 5 Met. 532. Where an indictment contains one good count and one bad one, the court will quash the bad count, and sustain the good count. 1 Bishop Cr. Pr. § 449. If there was a bad count in the indictment, and the demurrer to the plea could reach back to the indictment, it could do no more than a motion to quash would do,—reach the bad count. I insist, that in any view of the case the indictment is good, and this presents the whole question. Special attention is invited to a peculiar case cited by counsel, *Campbell* v. *State,* 9 Yerg. 333. In that case there were three counts. He was tried twice. 1. He was acquitted on the first and third, and con-

victed on the second. 2. He was acquitted on the first and second, and convicted on the third. It will be seen that he had been acquitted on all the counts, and was entitled to his discharge. It is not like the case at bar. No question is raised as to the sufficiency of the evidence to warrant the conviction. It is an attempt to escape upon a mere legal technicality, but it is altogether too technical.

CHALMERS, J., delivered the opinion of the court.

On the 26th of August, 1871, George Steen and William Steen were fired upon, and instantly killed, as they were riding together on the public highway in Montgomery County. Two witnesses, who were approaching them from an opposite direction, and who were about a hundred and fifty yards distant, testified that there were two distinct reports of firearms, almost, but not quite, simultaneous, and that instantly afterwards the appellant, Madison Teat, and his brother-in-law, A. J. Scott, climbed over the fence from which the firing had come, and walked into the road towards the dead bodies, each with a double-barrelled gun in his hands; and as they passed by the bodies, Scott fired again into the prostrate form of George Steen, and then both of the murderers disappeared in the woods on the other side of the road. They fled the country, but Teat was apprehended in the State of Missouri, brought back, and put upon his trial at the April Term, 1872, of the Circuit Court of Montgomery County. Two indictments had been found by the grand jury, in one of which Madison Teat and A. J. Scott were jointly charged with the murder of George Steen, and in the other they were jointly charged with the murder of William Steen. The indictment charging the murder of George was by the clerk of the court marked No. 3, and that charging the murder of William was marked No. 4. Teat was arraigned and put on trial upon indictment No. 3 for the murder of George, but, by some inexplicable accident during the progress of the cause, indictment No. 4 supplanted No. 3, and was by the jury taken out with them in their final deliberations, and upon this they brought in a verdict of guilty. The trial lasted for several days, and the record shows that, while the arraignment, and several of

the earlier entries were upon No. 3, the verdict, judgment, and some other of the later entries were upon No. 4. The mistake not being discovered, the accused was sentenced to be hung. From this verdict and judgment he sued out a writ of error to this court; and, a few days after this writ had issued, discovering the blunder which had occurred, he sued out a writ of error *coram nobis* before the circuit judge. The writ of error *coram nobis* was dismissed by the circuit judge, and an appeal from this judgment of dismissal was also taken to this court. The appeal on the writ of error *coram nobis*, and the writ of error in chief upon the merits, coming on to be heard together in this court, the action of the court below was reversed as to both; indictment No. 4 was ordered to be quashed, and the prisoner held for trial on indictment No. 3, or such other new indictment as might be preferred against him. Thereafter indictment No. 3 was quashed in the court below, upon motion of the district attorney, and a new indictment presented by the grand jury. This indictment charged the accused in three counts, as follows: 1. With the murder of George Steen; 2. With the murder of William Steen; 3. With the murder of George and William Steen. The prisoner, being arraigned upon this indictment, interposed a plea of *autrefois acquit*, embodying the facts herein set forth, and verifying them by the record; to which plea the district attorney demurred, which demurrer was by the court sustained. The accused thereupon pleaded "not guilty," and was by the jury convicted. From this conviction and judgment thereon he appeals to this court, assigning as error the action of the court below in sustaining the demurrer to the plea of *autrefois acquit*.

Several grounds of demurrer were assigned, but they may be reduced to two: 1. That the plea does not allege that there had been any verdict of acquittal rendered upon indictment No. 3, upon which the accused had been theretofore arraigned; 2. That the plea is not responsive to all the counts in the new indictment.

It will be seen that the antagonistic positions held by the defendant and the State on the first ground of demurrer are these: The defendant contends that, having been duly ar-

raigned and impleaded, and put upon his trial upon an indictment, in all respects valid, for the murder of George Steen, he was thereby put in jeopardy upon that charge; that the verdict returned by the jury, pronouncing him guilty of the murder of William Steen, was a nullity, but that the jury having thereupon been discharged, such discharge, without the rendition of a verdict on the indictment, upon which he had been arraigned, operated as an acquittal of the charge.

The view urged by the State is, that an accused person is never put in jeopardy until there has been a verdict returned for or against him, and that until there has been a verdict so returned he can never invoke the protection of the common-law maxim, *Nemo debet bis puniri pro uno delicto*, nor of the constitutional provision, that " no person's life or liberty shall be twice placed in jeopardy for the same offence."

There are few questions in the criminal law upon which the authorities are more irreconcilably at conflict than the one presented by these antagonistic views. Without elaborating a question which has been so often and so exhaustively discussed, we feel no hesitation in announcing our concurrence in that line of decisions which hold that a party is placed in jeopardy whenever, upon a valid indictment, in a court of competent jurisdiction and before a legally constituted jury, his trial has been fairly entered upon; and that if thereafter the jury is illegally, improperly and unnecessarily discharged by the court, it operates as an acquittal, so that he can never thereafter be arraigned for the same offence. It was held in *Price's Case*, 36 Miss. 531, that the court could discharge a jury who were unable to agree, and that such discharge would not operate as an acquittal; and some portions of the language used in that case would seem to inculcate the doctrine that nothing short of an actual verdict of acquittal or conviction would support a plea of former jeopardy. But in *Josephine's Case*, 39 Miss. 613, it was expressly declared that the court could not discharge the jury, except where there existed some legal necessity for so doing, as where it was demonstrated that they could not agree, or the term was about to expire, or some other legal or physical impossibility to the rendition of a verdict existed. In the doctrine thus stated

we agree; nor does it in any manner conflict with the idea that an unauthorized and unnecessary discharge of the jury will operate as an acquittal. All will, perhaps, agree that it would have this effect, if against the protest or without the consent of the accused the discharge was arbitrarily, oppressively and tyrannically directed by the judge; for otherwise that official might discharge the jury whenever he saw or apprehended that the indications pointed to an acquittal, and thus, by summoning successive juries, at length compel a conviction.

But if an acquittal would ensue by operation of law from a discharge proceeding from tyranny, it must spring also from one proceeding from a mere whim or caprice; and if from the latter, then equally will it follow where the discharge of the jury has been caused by some blunder or accident with which the accused had no connection. In the case at bar the accused was in the hands of the court from the time of his arraignment, with no power to direct its action, save to demand a fair trial, according to the forms of law. One of the rights guaranteed to him was, that the jury before whom he was arraigned should true deliverance make upon the issue joined; and when he was deprived of this right by a blunder of the ministers of the law, for which he was in no manner responsible, he was shielded by the Constitution from a second jeopardy. Thus, in the recent case of *Finch* v. *State, ante,* 363, the jury, on an indictment for a felony, returned a verdict of guilty during the absence of the prisoner, who was in jail, and were thereupon discharged; we held that the verdict so returned was a nullity, but that the accused could never again be tried for the same offence, and therefore directed his release.

We desire to be understood as limiting ourselves to the case before us, and not as holding that every accidental discharge of the jury will operate as an acquittal. We certainly do not mean to say that this result would flow from the escape of one or more jurors, or from the dispersion of the entire jury, without the order or consent of the court. We will let each case stand upon its own facts, and content ourselves with declaring that under the circumstances of the case at bar the defendant

had been legally acquitted of the murder of George Steen, and could not again be placed on trial therefor.

In the new indictment, however, under which the present conviction took place, there was a count for the murder of William Steen, and also one for the murder of William and George Steen. Did the legal acquittal of the murder of George Steen operate as an acquittal of the murder of William, or of the joint murder of both? Counsel for the accused so contend, resting their argument substantially upon two grounds: first, that each murder, or the joint murder of both, was established, and could only be established, by the same proof *in totidem verbis*, by which the murder of George Steen alone had been attempted to be proved; secondly, that there had been but a single act on the part of the accused, for which he could be but once tried, regardless of how many violations of law might have been wrought by the act.

It has been frequently said that one of the tests by which the conclusiveness of a plea of former jeopardy is to be tried is the question, whether the testimony by which it is proposed to establish the new offence is the same in every respect as that which was necessarily used in proving the first, and that where this question is answered in the affirmative it demonstrates the correctness of the plea.

Without impugning the soundness of the rule, it is manifest that it will not apply in a case where all the testimony, though admissible as a part of the *res gestæ* in the first trial, was not absolutely essential therein; and it is this very testimony (unessential though admissible in the first trial) which goes to prove the offence charged in the second. Thus, if in the same rencounter I kill two men, with an interval of one minute or less between the two mortal strokes, the State may well prove the killing of the second man, as being a part of the *res gestæ*, upon the trial for the murder of the first; and if I was first put on trial for the killing of the second, it would be absolutely necessary, perhaps, to prove the facts in relation to the killing of the first, so as to show the nature of the killing of the second. But whether first arraigned for either, it is evident that a verdict thereon will not bar a trial for the other, although the testimony on the second

trial may be identical with that adduced on the first. The reason is, that the killing of one is fully made out without proof of the death of the other : the fact of the killing of the other being only proved, because the two acts were so closely connected in point of time as practically to preclude its exclusion. They remain, nevertheless, two acts and two crimes, for each one of which the party may be separately tried, with similar or different results.

While in many of the cases the identity of proof is stated to be conclusive of the validity of the plea, without noting the distinction here drawn, yet these were all cases where one crime was merged in the other, or where one act resulted in a double crime, as, for instance, where a party in burning a house was guilty also of the murder of its occupants, who were consumed in the flames. Of this character were the cases of *State* v. *Cooper*, 1 Green (N. J.), 361 ; *State* v. *Shepard*, 7 Conn. 54 ; *Commonwealth* v. *Squire*, 1 Met. 258 ; *Hickey* v. *State*, 23 Ind. 21.

It is believed that no well-considered case can be found where a putting in jeopardy for one act was held to bar a prosecution for another separate and distinct one, merely because they were so closely connected in point of time that it was impossible to separate the evidence relating to them.

The second ground urged in support of the idea, that an acquittal of the murder of George Steen operated as an acquittal also of the murder of William, as well as of the joint murder of both, is, that both murders were in fact but a single act, and therefore can be the subject of but one indictment or trial.

It is to be observed that while this view is urged by counsel in argument, it is not clearly contained in the plea, in which it is only averred that the killing of George " was the same identical transaction as the killing of William, and that the evidence necessary to legally convict on the trial of the second indictment would have secured a conviction on the first trial." It will be noted that there is a failure to allege that there was but a single act committed by the accused, which resulted in a double killing, as that there had been but a single shot fired, which had produced both deaths.

If the plea had contained and the proof had supported this averment, the authorities are divided as to whether there could be two trials.

In Vermont it was held that, where by a single stroke of a knife two persons were wounded, a conviction for wounding one operated as a bar to a prosecution for the assault upon the other. *State* v. *Damon*, 2 Tyler (Vt.), 387. In analogy to this ruling seem to be *State* v. *Fayetteville*, 2 Murphy (N. C.), 371; *Fisher* v. *Commonwealth*, 1 Bush (Ky.), 211; *State* v. *Cooper*, 1 Green (N. J.), 361; *Roberts* v. *State*, 14 Ga. 8; *State* v. *Benham*, 7 Conn. 414.

In Virginia, on the contrary, it was determined that, where by a single discharge of a gun two persons were wounded, there might be two trials and two convictions. *Vaughan* v. *Commonwealth*, 2 Va. Cas. 273. In analogy with this decision seem to be the cases of *State* v. *Standifer*, 5 Porter (Ala.), 523; *State* v. *Thurston*, 2 M'Mullan (S. C.), 382; *People* v. *Warren*, 1 Parker Crim. Rep. 338; *Commonwealth* v. *Andrews*, 2 Mass. 408. Neither the pleading nor the proof in the case at bar renders a decision of this question necessary.

The plea does not aver the death of both from a single fire, and the evidence presumptively negatives it. There were two distinct and distinguishable discharges of fire-arms from the fence-corner, to say nothing of the subsequent shot fired by Scott into the prostrate body of George Steen. Now, all of these shots, in legal contemplation, were fired by Teat, even though in point of fact they may all have been fired by Scott, or rather the law holds them both responsible for both discharges.

If, as is most probable, Teat and Scott each fired from the fence-corner, then the act of each was the act of the other, and each is to be treated as having fired twice. It is thus seen that the action of the defendant was not limited to a single act, but that he is to be held as having discharged two separate guns, by which two men were slain. Under such circumstances, there can be no sound reason for holding that an acquittal as to one operates as a bar to a trial for the other.

In the absence of any averment or evidence that in point of fact it was the shot from one gun that killed both men, we

do not feel called upon to consider the effect that would flow from such a contingency.

We conclude that the technical acquittal of the murder of George Steen did not operate as an acquittal of the murder of William Steen, and that the second ground of demurrer to the plea of *autrefois acquit*, namely, that the plea did not extend to the whole indictment, was well taken, and the demurrer therefore properly sustained.

It is objected, however, that if the murder of George Steen and of William Steen were different offences, they cannot be joined in the same indictment, and that the judgment rendered thereon must therefore be arrested. This is erroneous. It is well settled that two offences of the same character, though committed at different times, may be joined in the same indictment. It is said to be bad practice, and the State upon motion may, in the discretion of the court, be compelled to elect upon which she will proceed ; but if no motion to that effect is made, the judgment after verdict will not be arrested. In this case no such motion was made. 1 Chitty Crim. Law, 253 ; *Young* v. *The King*, 3 T. R. 98, 105 ; 2 East P. C. 515 ; *Sarah* v. *State*, 28 Miss. 267.

We perceive no error in the record. Wherefore the judgment is affirmed.