BURTON *v.* STATE

No. 39414          April 4, 1955          79 So. 2d 242

32

*T. J. White,* Gulfport, for appellant.

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appellee.

KYLE, J.

The appellant, Robert Burton, was tried and convicted at the March 1954 term of the Circuit Court of Simpson County on a charge of unlawfully, wilfully and feloniously killing and slaying Annie Mangum, and was sentenced to imprisonment in the state penitentiary for a term of 20 years. From that judgment he prosecutes this appeal.

The indictment upon which the appellant was tried was one of three indictments returned against the appellant at the March 1945 term of the court as a result of the alleged unlawful killing of Mrs. Annie Mangum, Leonard P. Hall and Howard Walker by the culpable negligence of the appellant in the operation of an automobile. The accident in which the three persons named lost their lives occurred on October 21, 1944, on U. S. Highway No. 49, about 2½ miles south of the Town of Magee, when an automobile which was being driven by the appellant swerved from its proper course along the north bound traffic lane of the highway and struck the three persons named while they were standing on the east shoulder of the highway near a truck parked in front of Henry Mangum's residence. Leonard Hall was killed instantly. Mrs. Annie Mangum and Howard Walker were fatally injured and died about one hour later after they reached the hospital at Magee. The driver of the death car did not stop to make known his identity or to render assistance to the injured.

The appellant was tried at the March 1945 term of the court on the indictment charging him with the killing of Leonard Hall, and was convicted and sentenced to imprisonment in the state penitentiary for a term of years. No action was taken on either of the other indictments until January 4, 1954, when an alias capias was issued to the Sheriff of Simpson County for the

appellant's arrest on the indictment which charged him with the killing of Mrs. Annie Mangum. The appellant was arraigned at the March 1954 term of the court on that indictment, and entered a plea of not guilty. The appellant at the same time filed a written plea of former jeopardy.

In his plea of former jeopardy the appellant alleged that he had been put to trial on March 19, 1945, on the indictment which charged him with the unlawful killing of Leonard Hall, and that he had been convicted and sentenced to the state penitentiary for a term of years for that offense; that the conviction in that case was based upon the appellant's alleged culpable negligence in the operation of his automobile which resulted in the killing of the said Leonard Hall; and that, with the exception of the name of the person killed, the crime charged in the indictment for the killing of Mrs. Annie Mangum was one and the same crime as that charged against him in the indictment for the killing of the said Leonard Hall. The appellant also alleged in his plea that, while there were three persons who had lost their lives as a result of the appellant's alleged culpable negligence, there was only one instrumentality used and only one accident, and that the appellant had already been tried and convicted for the alleged crime of manslaughter growing out of said alleged culpable negligence, and that to try him for the killing of the said Mrs. Annie Mangum would constitute a second jeopardy and would violate his constitutional right not to be tried twice for the same offense.

The appellant introduced evidence in support of his plea of former jeopardy and testified for himself in support of said plea.

The court overruled the plea of former jeopardy, a jury was empaneled and the court proceeded with the trial.

The testimony of the State's witnesses showed that Leonard Hall and his wife, Mrs. Hattie Hall, and his

son, Leonard Hall Jr., Henry Mangum and his wife, Mrs. Annie Mangum, Arthur Mangum and his wife, Mrs. Ola Mangum, and Howard Walker had made a business trip to the City of Jackson on October 21, 1944, in Leonard's Hall's Chevrolet truck, and that the parties were returning to their homes a few miles south of Magee at the time the accident occurred. When they reached a point on the highway opposite Henry Mangum's house, about nightfall, the driver of the truck pulled over on the shoulder of the highway and stopped to permit Henry Mangum and his wife to get off the truck, and to permit Henry Mangum to unload two sacks of feed and other merchandise that he had purchased during the day. Henry Mangum and his wife got off the truck, and Leonard Hall and his wife and son also got off the truck.

While Henry Mangum was engaged in unloading from the truck the sacks of feed and other articles of merchandise that he had purchased during the day, an automobile was seen approaching from the south. The car was first seen as it passed over the crest of a hill about 300 yards south of the entrance to Henry Mangum's driveway. The car continued its course down the highway at a rapid rate of speed until it reached a point only a short distance from the place where the truck was parked, and then angled off from the east traffic lane of the highway on to the edge of the shoulder and struck with terrific force Mrs. Annie Mangum, Leonard Hall and Mrs. Hattie Hall, who were standing on the shoulder of the highway near the door of the truck. The car then side-swiped the truck and hit Howard Walker, who was at the rear end of the truck. Leonard Hall was killed instantly. Mrs. Annie Mangum and Mrs. Hattie Hall were knocked under the body of the truck, and Mrs. Mangum died about an hour later as a result of her injuries. Howard Walker was caught up on the front end of the car and was carried about 100 yards down the highway before he fell off or was thrown off.

Arthur Mangum, who was standing astraddle the truck body when the car passed, testified that the car was traveling at a rate of speed of 60 or 65 miles per hour, that two wheels of the car left the pavement about 20 feet before it got to the truck, and that the car was 30 or 40 feet behind the truck before it got back on the pavement. After Mangum saw that the driver of the car did not intend to stop, he took from his pocket a pistol and fired two shots at the car before it got out of sight. Mangum stated that the driver of the car was a Negro, and that there were several other persons in the car with him, but he was unable to identify any of them. Mangum stated that the highway was straight for a distance of approximately 600 yards as it passed Henry Mangum's home, and that the driver of the automobile had a clear view of the highway from the top of the hill 300 yards south of the entrance to Henry Mangum's premises to a point far north of the place where the wreck occurred.

Luther Boone, Leonard Hall's son-in-law, who lived on the west side of the highway only a short distance from Henry Mangum's residence, testified that he had boarded the truck at Magee, and when the truck came to a stop he got off the truck and walked around in front of the truck and was about to cross the highway to go to his home when he saw the automobile approaching. Boone stated that the car was about 300 yards up the highway at that time and appeared to be running about as fast as it could run. Boone stopped on the shoulder of the highway in front of the truck and waited for the car to pass, and Boone saw the car angle off toward the truck and hit the people who were standing on the shoulder of the highway only a few feet from him. Boone stated that there was no vehicle approaching from the north at the time of the accident, and there was nothing in the highway to cause the driver of the automobile to leave the highway and strike the people stand-

ing near the truck. Boone did not know whether the driver of the car was white or colored, and he did not know how many people were in the car.

Leonard Hall Jr. testified that he was on the lefthand side of the truck and was getting in the truck to drive to his father's home when the accident occurred. He stated that the truck was parked about 2½ feet from the pavement and was leaning away from the pavement, because there was a ditch on the other side; that the automobile did not touch the front end of the truck when it passed, but that it did scrape and damage one of the dual wheel tires on the rear end of the truck. Hall also testified that there was no other car in sight at the time of the accident.

Henry Mangum testified that he was standing on the left side of the truck and was unloading his sacks of feed and other supplies at the time of the accident. The truck had been pulled over about 2½ feet from the black top surface of the highway, and the left wheels were standing in a ditch. Mangum stated that he saw the automobile approaching from the south and noticed that it was wobbling as it came down the highway, but when it was about 50 yards up the road it looked like it was going straight. Mangum reached for a sack of flour on the truck, and as the car passed he heard screams. After the car had passed he found his wife and his sister, Mrs. Hall, lying partly under the truck against the back wheels. A part of Leonard Hall's body was lying in the highway and a part under the truck. Howard Walker was found lying in a clump of weeds and grass off the highway about 122 steps north of the truck.

The testimony showed that the injured persons (not including Leonard Hall, who had been killed instantly), were carried to the hospital at Magee a few minutes after the accident. Mrs. Annie Mangum had a hole knocked in her right hip. Her left eye was knocked out, and her cheek bone was broken. Her legs were broken

just above the knees. She died in the operating room a few minutes after arriving at the hospital. Howard Walker's legs were broken in several places and his body crushed. He also died soon after reaching the hospital.

Frank Barnett, who worked in the Town of Magee, testified that he was returning to his home in the country ten miles south of Magee on the night of the wreck, about 10 o'clock, and when he was about two miles from his home the appellant stopped him in the road and informed him that the water had leaked out of his car and he could not get the car started, and the appellant requested him to push his car for him, so that he could get the car started. Barnett asked the appellant who he was, and the appellant told him that he was Robert Burton and that he was enroute to the home of Joe Weems, who was his wife's father. Barnett stated that he smelled liquor on the appellant while he was talking to him; but he helped the appellant start his car, and the appellant drove on ahead of him toward Joe Weems' house. It was also shown by other witnesses that on Saturday, one week after the wreck, the appellant took his car, which was a 1935 or 1936 model Chevrolet, to Howard Womack's garage in the Town of Magee for the purpose of having the radiator of the car repaired. When the radiator was removed from the car, water from the radiator was spilled on the floor of the garage. The water had a sickening odor. The foreman of the garage and his helpers made a further examination and found fragments of skin and flesh on the right side of the car around the hinge of the front door and strands of red hair lodged in a broken place in the right front fender, a dent in the radiator, and two small dents in the trunk lid of the car. These facts were reported to the town marshal, and the appellant was taken into custody.

Two state highway patrolmen questioned the appellant soon after he was arrested, and Patrolman Marshall

Sherman Willis testified that he asked the appellant whether he was the person who was driving the car at the time the three people were killed on the preceding Saturday night about 1½ or 2 miles south of Magee, on U. S. Highway No. 49. The appellant said that he was, and the appellant stated that the reason he did not stop his car after the accident occurred was that he was afraid, that somebody shot at him after he had passed the truck. The appellant also stated that he was blinded by the lights of another car that was approaching from the north.

Willis also testified that a piece of a radiator ornament that was found near the scene of the accident had been turned over to him after the accident by Bert Hall, and it was shown by other witnesses that another piece of a radiator ornament that matched it had been found in the weeds near Joe Weems' house where the appellant's car had been left from the night of the accident until the following Saturday.

The appellant offered no witnesses to testify in his own behalf, and the appellant did not testify himself.

It is earnestly argued on behalf of the appellant that the trial judge erred in overruling the appellant's plea of former jeopardy and in refusing the appellant's request for a peremptory instruction at the conclusion of the State's evidence. The appellant's contention is that there was only one instrumentality used and only one accident; that there was but a single act of culpable negligence, which resulted in the killing of Leonard Hall and Mrs. Annie Mangum; and that the appellant has already been tried and convicted of manslaughter in the killing of Leonard Hall, and that he cannot be tried again on another manslaughter charge based upon the same unlawful act.

The question that we are called upon to decide is not free from difficulty.

40

■ ■ It is an established principle in the administration of criminal justice recognized since earliest times and guaranteed by the Federal Constitution and the Constitutions of most states, that no one shall be twice put in jeopardy for the same offense. 26 Am. Jur., p. 275, Homicide, par. 175. See also, Kohlheimer v. State, 39 Miss. 548, 77 Am. Dec. 689.

Section 22 of the Mississippi Constitution provides that,

"No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution."

■ ■ The prohibition of the common law and of the constitution is against a second jeopardy for the same "offense", that is, for the identical act and crime. Teat v. State, 53 Miss. 439, 24 Am. Rep. 708; Smith v. State, 67 Miss. 116, 7 So. 208; Huffman v. State, 84 Miss. 479, 36 So. 395; Cutshall v. State, 191 Miss. 764, 4 So. 2d 289; Berry v. State, 195 Miss. 899, 16 So. 2d 629. ■ ■ Or, as expressed in a number of cases, to entitle the accused to plead former jeopardy, the offenses charged in the two prosecutions must be the same in law and in fact. 22 C.J.S. p. 414, Criminal Law, par. 278; and cases cited.

■ ■ There is a distinction between an offense and the unlawful act out of which it arises. And the test is not whether the accused has been tried for the same act, but whether he had been put in jeopardy for the same offense. State v. Rose, 89 Ohio St. 383, 386, 106 N.E. 51, L.R.A. 1915A 256; State v. Billotto, 104 Ohio St. 13, 135 N.E. 285; People v. Allen, 368 Ill. 14 N.E. 2d 397; State v. Fredlund, 200 Minn. 44, 273 N.W. 353, 113 A.L.R. 215.

■ ■ In the case of State v. Rose, supra, the Court said:

"The words 'same offense' means same offense, not the same transaction, not the same acts, not the same circumstances or same situation * * *. It is not enough that some single element of the offense charged may have a single element of some other offense as to which the defendant had theretofore been in jeopardy, but the constitutional provision requires that it shall be the 'same offense'. The usual test accepted by the text writers on criminal law and procedure is this: If the defendant upon the first charge could have been convicted of the offense in the second, then he has been in jeopardy."

In the case of Rocco v. State, 37 Miss. 357, the Court held that, in order to render the defense autrefois convict or acquit effectual, the defendant must not only show the record of his former conviction or acquittal, but he must show by evidence aliunde the identy of the offense of which he was formerly convicted or acquitted with the offense charged in the indictment to which the defense is made. In the case of Price v. State, 104 Miss. 288, 61 So. 314, the Court held that, where a defendant charged with a crime interposes the plea of autrefois acquit—former jeopardy, the burden of proof is upon him to prove he had been acquitted upon the merits of the identical offense he is called upon to answer.

It is generally agreed that "A putting in jeopardy for one act is no bar to a prosecution for a separate and distinct act, merely because they are so closely connected in point of time that it is impossible to separate the evidence relating to them on the trial for the one of them first had. Consequently, a plea of former jeopardy will not be sustained where it appears that in one transaction two distinct crimes were committed. The conviction or acquittal of one charged with the murder of, or an assault upon, one person is not a bar to his subsequent prosecution for the murder of, or an assault upon, another person at the same time where the two

offenses were due to separate acts; * * *." 15 Am. Jur., p. 65, Criminal Law, par. 390.

In the case of Jones v. State, 66 Miss. 380, 6 So. 231, 14 Am. St. Rep. 570, the Court held that, if a person engaged in a difficulty with two opponents unlawfully strikes each of them, he is subject to conviction for each assault, and a conviction for one will not bar a conviction for the other.

In the case of Johns v. State, 130 Miss. 803, 95 So. 84, the Court held that where two or more persons were robbed at the same time, in one transaction, each robbery constituted a separate and distinct offense, and that a prosecution in one case did not bar a subsequent prosecution in the other.

In the case of Teat v. State, 53 Miss. 439, 24 Am. Rep. 708, there had been a double homicide from a shooting in ambush, and the Court in its opinion written by Justice Chalmers rejecting the plea of former jeopardy said: "Thus, if in the same rencounter I kill two men, with an interval of one minute or less between the two mortal strokes, the State may well prove the killing of the second man, as being a part of the res gestae, upon the trial for the murder of the first; and if I was first put on trial for the killing of the second, it would be absolutely necessary, perhaps, to prove the facts in relation to the killing of the first, so as to show the nature of the killing of the second. But whether first arraigned for either, it is evidence that a verdict thereon will not bar a trial for the other, although the testimony on the second trial may be identical with that adduced on the first. The reason is, that the killing of one is fully made out without proof of the death of the other; the fact of the killing of the other being only proved because the two acts were so closely connected in point of time as practically to preclude its exclusion. They remain, nevertheless, two acts and two crimes, for each one of which the party may be separately tried, with similar

or different results. * * * It is believed that no well-considered case can be found where a putting in jeopardy for one act was held to bar a prosecution for another separate and distinct one, merely because they were so closely connected in point of time that it was impossible to separate the evidence relating to them.''

The appellant contends, however, that the killings in this case were not only so closely connected in point of time that it was impossible to separate the evidence relating to them on the trial for the one of them first had, but that the killings resulted from a single act of criminal negligence and therefore can be the subject of only one prosecution and one trial.

In the Teat case the record did not show that the double killing resulted from the firing of a single shot, and the court was not called upon to consider the question whether more than one prosecution could be instituted, if two or more persons were injured or killed as a result of a single criminal act. But in the case of Berry v. State, 195 Miss. 899, 16 So. 2d 629, the record showed that the appellant had been indicted for assault and battery with intent to murder two persons who had been injured by the firing of a single shot, and the Court held that each injury should be regarded as constituting a separate and distinct offense.

''In the determination of whether both indictments charge the same offense the test generally applied is that when the facts necessary to convict on the second prosecution would have convicted on the first, a final judgment on the first prosecution will be a bar to the second; but if the facts which will convict on the second prosecution would not necessarily have convicted on the first, then the first will not be a bar to the second, although the offenses charged may have been committed by the same state of facts. * * * Offenses are not the same if upon the trial of one proof of an additional fact is required, which is not necessary to be proved in the

trial of the other although some of the same acts may be necessary to be proved in the trial of each.'' 15 Am. Jur. 54, Criminal Law, par. 380.

It may be argued that the gravamen of the offense in a case of this kind is culpable negligence in the operation of an automobile, and that the fact that more than one person was killed is immaterial so far as the offense is concerned.

But the appellant in this case was not indicted for a violation of the highway traffic regulations. He was not indicted for the reckless driving of an automobile, or for driving while under the influence of intoxicating liquor, or for driving at an excessive rate of speed. The indictment upon which the appellant was tried was an indictment for homicide, for the felonious killing and slaying of Mrs. Annie Mangum. The charge was a manslaughter charge based upon the provisions of Section 2232, Code of 1942, which provides that, ''every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this chapter, shall be manslaughter.'' The indictment was drawn under the provisions of Section 2454, Code of 1942, which provides that, ''In an indictment for homicide it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient to charge in an indictment for murder that the defendant did feloniously, wilfully and of his malice aforethought, kill and murder the deceased. And it shall be sufficient, in an indictment for manslaughter, to charge that the defendant did feloniously kill and slay the deceased, concluding in all cases as required by the Constitution.''

For the appellant to avail himself of a plea of former jeopardy in this case, it was necessary that he show that the offense for which he was being tried was the same in law and fact as the one for which he had al-

ready been tried. And this he was unable to do. The indictment upon which the appellant was tried in 1945 was an indictment for the killing and slaying of Leonard Hall. The appellant could not have been tried on that indictment for the killing and slaying of Mrs. Mangum, and the appellant was not put in jeopardy at that time for the unlawful killing of Mrs. Mangum. As stated by the Ohio Court in State v. Billotto, 104 Ohio St. 13, 135 N.E. 285, 287, ''You cannot try a man for the unlawful killing of any human creature other than the one he is charged with killing in the indictment upon which he is then being tried. We do not prove the substance of one crime by proving the substance of another.''

The majority of the courts hold that where two or more persons are injured or killed by a single criminal act in the operation of a motor vehicle, there are as many separate and distinct offenses as there are persons injured or killed by the unlawful act, and that successive prosecutions may be instituted against the person who committed the unlawful act without violating the rule against double jeopardy.

In the case of State v. Fredlund (1937), 200 Minn. 44, 273 N.W. 353, 113 A.L.R. 215, the Court held that an acquittal of the driver of a motor vehicle of murder in the third degree of one of two occupants of an automobile who were killed in an automobile collision was not a bar to a prosecution for murder in the third degree of the second occupant of the automobile. In that case there was an automobile collision. One car was driven by a Mr. Busch, the other by the defendant. Mrs. Busch lost her life, as did also their minor child, Walter. The grand jury returned two indictments against the defendant charging him with murder in the third degree under the provisions of the Minnesota statute. Both indictments were the same in substance except as to the person killed; and the same witnesses were

produced before the grand jury, and their names were identical as indorsed upon the indictments. The defendant was tried first on the indictment charging him with the death of Mrs. Busch; and the jury returned a verdict of "not guilty." The defendant then filed a motion asking for permission to withdraw his plea of not guilty on the other indictment and to enter a formal plea of former jeopardy by reason of the jury's verdict on the trial of the indictment involving the death of Mrs. Busch. The trial judge rejected the plea, and the cause was certified to the supreme court for its opinion upon the question presented by the defendant's motion. The Court held that a plea of former jeopardy would not be sustained where it appeared that in one transaction two distinct crimes were committed. And the Court in its opinion said: "The constitutional provision against double jeopardy has, as we have seen, for its objective that no one shall be brought into danger of punishment for the same offense more than once. But neither in the federal nor in our own Constitution is there any prohibition against successive prosecutions if the wrongful act is the cause of separate and distinct offenses." The Court held further that it is the identity of the offense, and not of the act, which is referred to in the constitutional guaranty against putting a person twice in jeopardy, and specifically, where two or more persons are injured in their persons, though it be by a single act, yet since the consequences affect, separately, each person injured, there is a corresponding number of distinct offenses.

In Fay v. State (1937), 62 Okla. Crim. 350, 71 P. 768, the Court held that a conviction of a driver of a motor vehicle of an assault with intent to kill one of two pedestrians struck by the defendant's motor vehicle at the same time was not a bar to a prosecution for assault with intent to kill the other pedestrian. The Court in its opinion in that case said: "While the authorities

are not in harmony on the question involved in this case, we hold that the greater weight of respectable authorities sustains the contention of the state that, notwithstanding the fact that the injury of the Brewer girls was caused by the car of the defendant striking them at or near the same time and place, the injury to each of the girls constitutes a separate offense, and that the contention of the defendant that he could not be put on trial for the injury to Genella Brewer, after he had been tried and convicted and his case pending in the Criminal Court of Appeals for the injury to Betty Joe Brewer, is without merit. This Court holds that where two or more persons are injured by a single criminal act, there are as many separate and distinct offenses as there are persons injured by the unlawful act.''

In the case of People v. Allen (1937), 368 Ill. 368, 14 N.E. 2d 397, the Court likewise held that where a motorist so operated a motor vehicle as to cause the death of two pedestrians in the same accident, two separate and distinct offenses were committed, and that the discharge of the motorist for the involuntary manslaughter of one of the two pedestrians was not a bar to a subsequent prosecution for the involuntary manslaughter of the other. The Court in that case said: ''When a former acquittal or conviction is pleaded in bar of a subsequent prosecution, the test is whether the facts charged in the latter indictment would, if found to be true, have justified a conviction under the earlier indictment. If they do, then the judgment on the earlier indictment is a complete bar to a prosecution under the later indictment; other wise not. * * * Applying these principles to the facts in this case, the question presented is: Could a jury in the former case, which charged the manslaughter of Ray Duran, have returned a verdict for the manslaughter of Charles Klafter? * * * An accused cannot be tried for the manslaughter of any other person than the one charged by the indictment upon which he is then being tried. * * * In order for

one prosecution to be a bar to another, it is not sufficient to show that the act is the same, but it must be shown that the offense, also, is the same in law and in fact."

The rule laid down in the above mentioned cases has been approved and applied by the courts of other states in the following cases: State v. Taylor (1936), 185 Wash. 198, 52 P. 2d 1252; Fleming v. Commonwealth (1940), 284 Ky. 209, 144 S.W. 2d 220; Commonwealth v. Maguire (1943), 313 Mass. 669, 48 N.E. 2d 665; Lawrence v. Commonwealth (1943), 181 Va. 582, 26 S.E. 2d 54; Holder v. Fraser (1949), 215 Ark. 67, 219 S.W. 2d 625; State v. Martin (1951), 154 Ohio St. 539, 96 N.E. 2d 776; and Jeppesen v. State (1951), 154 Neb. 765, 49 N.W. 2d 611.

In Iowa, New Jersey and Tennessee, however, the courts have held that, where two or more persons are injured or killed by a single criminal act in the operation of a motor vehicle, only one offense is committed and an acquittal or conviction of an offense based on the injury or death of one of the persons will be a bar to a prosecution of offenses based on the injury or death of the other persons. See State v. Cosgrove (1927), 103 N.J.L. 412, 135 A. 871; Smith v. State (1929), 159 Tenn. 674, 21 S.W. 2d 400; and State v. Wheelock (1933), 216 Iowa 1428, 250 N.W. 617. But the principle upon which those cases were decided has been rejected by the courts in other jurisdictions.

From an examination of the authorities we are convinced that the correct rule is, that when a single unlawful act results in the killing of more than one person, each homicide constitutes a separate offense for which the defendant may be tried without being twice put in jeopardy for the same offense; and we think there was no error in the action of the trial judge in overruling the appellant's plea of former jeopardy.

It is also argued on behalf of the appellant that the court erred in admitting the testimony of the

highway patrolman relating to the appellant's admission that he was the driver of the death car, for the reason that the patrolman did not refer to Mrs. Mangum by name as one of the victims when he questioned the appellant concerning the accident. But we think there is no merit in this contention.

We find no error in the record that would justify a reversal of the judgment of the lower court, and the judgment is therefore affirmed.

Affirmed.

*Roberds, Lee, Holmes* and *Ethridge,* JJ., Concur.

*McGehee,* Special Opinion:

It is to be conceded that the weight of authority from other jurisdictions is in support of the conclusion reached in the majority opinion herein. Moreover, we have no previous decision of this Court where the precise question here involved has been at issue, and I think that while the decisions in the majority of the other states where the question has been passed on are to the effect that where two or more persons are killed as a result of a single act on the part of an accused, and he has been convicted of manslaughter for the killing of one of such persons, a plea of former jeopardy is not to be sustained. But I think that the minority rule declared in the decisions of State v. Cosgrove, 103 N.J.L. 412, 135 A. 871; Smith v. State, 159 Tenn. 674, 21 S.W. 2d 400; and State v. Wheelock, 216 Iowa 1428, 250 N.W. 617, should be followed in the case at bar for the reason that the defendant was given the maximum penalty of twenty years in the state penitentiary as a result of his conviction more than ten years ago for killing Leonard P. Hall, one of the victims of the automobile accident discussed in the controlling opinion.

It is to be presumed that in imposing the maximum sentence of twenty years in 1945 under the proof and

the verdict of guilty that the accused had operated his automobile in such a grossly negligent manner as to show indifference to the safety of human life on the highway, making him guilty of manslaughter because of such culpable negligence, the trial judge took into consideration the grave consequences of the act of the accused in driving his automobile in the negligent manner shown by the proof. He could have sentenced this convicted defendant at the conclusion of the first trial to any term of imprisonment less than twenty years or for the maximum period of twenty years.

To now impose an additional twenty-year sentence upon the accused, and with the right on the part of the State at the end of such period or prior thereto to try him on the third indictment, could amount to a life sentence for less than a capital felony, that is to say, a life sentence for one culpably negligent act. I think that the New Jersey, Tennessee and Iowa Courts in the decisions hereinbefore referred to were correctly influenced by the policy of humanity of the law in holding that the plea of former jeopardy was good where the accused has previously been convicted under the same facts and circumstances as would be adduced on a second trial except as to the name of a second victim of the single act committed by him.

I think the rule stated in 15 Am. Jur. 65, Criminal Law, Par. 390, is the correct rule to be applied, and which is stated as follows: "A putting in jeopardy for one act is no bar to a prosecution for a separate and distinct act merely because they are so closely connected in point of time that it is impossible to separate the evidence relating to them on the trial for the one of them first had. Consequently, a plea of former jeopardy will not be sustained where it appears that in one transaction two distinct crimes were committed. The conviction or acquittal of one charged with the murder of, or an assault upon, one person is not a bar to his subse-

quent prosecution for the murder of, or an assault upon, another person at the same time where the two offenses were due to separate acts; * * *''.

As correctly observed in the controlling opinion, this Court held in the case of Jones v. State, 66 Miss. 380, 6 So. 231, 14 Am. St. Rep. 570, that if a person engaged in a difficulty with two opponents unlawfully strikes each of them, he is subject to conviction for each assault, and a conviction for one will not bar a conviction for the other.

Also, as stated in the controlling opinion, this Court held in the case of Johns v. State, 130 Miss. 803, 95 So. 84, that where two or more persons were robbed at the same time, in one transaction, each robbery constituted a separate and distinct offense, and that a prosecution in one case would not bar a subsequent prosecution in the other. In other words, a gangster may exhibit a pistol and require one person while under the fear thereof to hand over his money and then require the second victim to do likewise, and he has thereby intentionally and willfully committed two separate acts of robbery, but in the instant case when the accused, although on his proper side of the highway, so drove his automobile as to kill three persons in a row who were standing just off the pavement to his right talking to some occupants of an automobile parked on the east side of the highway while the accused was traveling north, there was nothing whatever that he could have done to have avoided striking the second and third victim after having struck the first with his automobile; they were standing close together within the length of the automobile in which the persons were sitting and to whom they were talking.

All of the Mississippi cases discussed in the controlling opinion, as is affirmatively disclosed by the opinion, are cases of intentionally and willfully committing two separate and distinct crimes, whereas this Court held

in the case of Smith v. State, 197 Miss. 802, 20 So. 2d 701, that * * * the gist of the offense of involuntary manslaughter with a motor vehicle is criminal negligence, which must be wanton or reckless under circumstances implying danger to human life.'' The accused was driving his automobile in a wanton and reckless manner and under circumstances which he should have known would likely endanger human life, and such was his offense.

The appellant Robert Burton should have been both *indicted* and tried for operating his automobile in such a grossly negligent manner as to evince a reckless disregard for the safety of human life and with the result that he was guilty of culpable negligence in killing Leonard P. Hall, for whose death he was convicted ten years ago, and the other two indictments should have contained the same charge except as to the name of the victim, so as to fully apprise the accused of the nature and character of the accusation against him as contemplated by Section 26 of the State Constitution. The indictments were drawn under the provisions of Section 2454, Code of 1942, and simply charged that the defendant ''did feloniously kill and slay the deceased.'' I do not think that this statute is applicable except where there has been an intentional and willful killing of a human being under such circumstances as to constitute manslaughter.

It is true that at the time of the trial of the accused for the killing of Annie Mangum he had not been placed in former jeopardy for killing her by his previous trial for the killing of Leonard P. Hall, but he had been placed in former jeopardy, convicted and sentenced for the same grossly negligent act in the manner of the driving of his automobile on the occasion complained of. The same testimony on which his prior conviction was based was necessarily the same as that on which he was tried ten years later for the killing of Annie Mangum, in the instant case, except for the necessity of identify-

ing her as the victim in the last trial instead of Leonard P. Hall as the victim in the first trial.

Therefore in view of the fact that the trial judge must of necessity have taken into consideration the full facts when giving the accused the maximum penalty of twenty years in the state penitentiary on the first trial instead of from two to twenty years or less, it seems to me that the second prosecution should not have been entertained as a precedent for a third trial for the killing of the other victim, and with the result that the defendant can be required to serve a total of sixty years for his crime of manslaughter.

*Hall, Arrington* and *Gillespie,* JJ., Concur.