## BILLINGS *v.* HARVEY *et al.*

Under the Constitution of this State, the amendment of a statute operates as an absolute repeal of the old statute or section so amended, even if the amendment takes nothing away from the old law, but merely adds a *proviso* in certain cases.

The Act of April 11th, 1855, amending the sixth section of the Statute of Limitations of 1850, by a *proviso* extending the time for commencing actions of ejectment under Spanish or Mexican titles, repeals that section *in toto.*

It follows that the Act of 1855 is the only Statute of Limitations to actions for the recovery of real property, and that the time fixed therein runs only from the date of that Act.

APPEAL from the District Court of the Sixth Judicial District.

This was an action of ejectment for certain town lots in the city of Sacramento. The complaint was filed October 17th, 1855.

The defence set up was that the defendants had been in the actual and peaceable possession of the land adversely to the plaintiff, for over five years next preceding the commencement of this action.

The plaintiff put in evidence the grant from the Mexican Government to John A. Sutter, for eleven leagues of land, known as the New Helvetia grant, and regular mesne conveyances to plaintiff. He also proved that in 1849, Sutter had under enclosure a portion of the land claimed by him under his grant, including the lots in dispute in this action. The defendants proved that they, and those under whom they claimed, had been in actual possession of the lots in controversy, since early in 1850.

The grant to Sutter, dated June 18th, 1841, was made on certain terms and conditions not necessary to be recited in this case, as it appears to have been introduced only to qualify his possession.

On the trial, the Court, at the request of the defendant, charged the jury, that "if it is shown by the evidence that the defendants and those under whom they claim, have held possession of the property in dispute adversely to plaintiff, for a period of five years before the commencement of this action, the jury should find a verdict for defendants." To this instruction, among others, the plaintiff excepted, and the appeal seems to have been made on this question alone, there being no bill of exceptions or assignment of errors in the record.

The jury found a verdict for the defendants. Plaintiff moved for a new trial, which was denied, and plaintiff appealed.

*Jo. G. Baldwin* for Appellant.

The question that arises on the construction of the Statute of Limitations, (Laws of 1855, p. 109,) is one of very great importance, though in my opinion, of no great difficulty.

The law is to be construed in reference to the "old law, the evil and the remedy." It was apprehended that no suit in ejectment or other analogous action, could be maintained upon a Mexican grant, until con-

firmed; and as the confirmation might not be until after the limitation of the old law, it was simply intended by the new law, to prolong the period of suit *until and after* such confirmation. But it never was intended, under cover of a new law, for the benefit of grantees, to take away any rights which attached, or which the grantee might have under old one.

It was not intended especially to prohibit the bringing of a suit, until after confirmation; this would be introducing an evil and an element into a statute of limitation, which never existed in any other; for the effect of the construction given to the statute, is practically to declare that there shall *be no owner for real estate for an indefinite period of time.*

But another view of the statute is conclusive. The statute is a statute of limitations, and recognizes or supposes a disability, to wit: in the fact that the claim is founded on Mexican grant. The rule is, that in the construction of savings or exemptions, in favor of those laboring under disabilities, no limitation attaches until the disabilities are removed.

For example, where a statute saves the rights of infants and *feme coverts*, or those beyond sea, or *non compos*, it never was supposed that they have to wait for the removal of a disability before they can sue. If a statute of limitations limits the action of detinue to a year, and provides that an infant shall have a year after he arrives at age to sue; and A takes away the property of the infant, and a year elapses from such taking, it has never been held, that the infant cannot maintain an action until after he does come of age.

It is as if the Act read: "A Mexican grantee may sue when he chooses, provided he does not take longer time to sue than five years, after he gets his title confirmed."

Not that these actions shall be postponed to within five years after confirmation, but limited to that time. They may be brought as much sooner than that as the party chooses, and the sooner the better.

*Moore & Welty* for Respondents.

The instructions of the Court, asked for by defendant and given, are correct and applicable to the cause.

The Statutes of Limitations, as applied to lands, run as against a person claiming title to the same, and it is immaterial who is the occupant, or whether one succeeds to the occupancy or interest of another, or whether such succession be by deed or parol; if the occupation of the land is adverse and continuous so that no gap intervenes.

Under our statute the claimant must show affirmatively that he or his ancestors, etc., have been in possession within five years, and must show a legal title in fee simple, not a mere prior possession. Vanderslice *v.* Hanks, 3 Cal., 27.

It has already been decided by this Court that a title under a Spanish grant cannot be pleaded until after their final confirmation.

The opinion of the Court was delivered by Mr. Justice HEYDEN-FELDT. Mr. Chief Justice MURRAY concurred.

This is an action of ejectment, and the defence rests upon the Statute of Limitations. The 6th section of the Act of April, 1850, limits the time for commencing actions for the possession of lands to five years. Another Act was passed in April, 1855, amendatory of the first Act, by which the 6th section referred to, was amended and re-enacted.

The only question to be determined is whether the 6th section or the first Act remained in force as a part of that Act so as to fix the time when the statute commenced to run, or whether the time must date alone from the passage of the amendatory Act. It is here necessary to observe that the amendment of the 6th section takes nothing from that section as it originally stood, but only adds a proviso, which in no manner affects the operation of the section in the present case, provided it is still in force.

According to the ordinary construction of statutes, a mere amendment would not have the effect of changing the operation of the Act amended as to time, except so far as the alteration itself is concerned; but under our Constitution a new rule was adopted for the amendment of statutes, totally different from that which had before prevailed. Section 25 of Art. 4, ordains that "no law shall be revised or amended by reference to its title; but in such case the Act revised or section amended, shall be re-enacted and published at length."

From this language it appears too clear to require argument, that if a statute or section of a statute is re-enacted, it is totally inconsistent with the idea that the old statute or section still remains in force, or has vitality for any purpose whatever.

The re-enactment creates anew the rule of action, and even if there was not the slightest difference in the phraseology of the two, the latter alone can be referred to as the law, and the former stands to all intents as if absolutely and expressly repealed.

It follows, necessarily, that the defence to this action cannot be maintained, and the judgment is therefore reversed and the cause remanded.