## DAVE AUGUSTINE v. THE STATE.

### No. 1969. Decided June 21, 1899.

**1. Murder—Plea of Former Acquittal Where Two Parties Were Killed.**

A plea of former acquittal for the murder of one of two parties killed in the same transaction, to be a good plea in bar, must show that but one shot was fired and that it caused the death of both parties. It is not good where the parties were killed by distinct acts. In one transaction a man may commit distinct offenses of assault or homicide upon different persons and be separately punished for each.

**2. Same.**

If the killing of two persons is by distinct and separate acts, though done at the same time and as a part of the same transaction, the acquittal for the killing of one of said parties is not a bar to a prosecution for the killing of the other.

**3. Same—Charge Upon Murder in Second Degree.**

It is best in every case of murder that the court should submit in the charge murder in the second degree, and where a case stands out in relief as one of murder in the first degree, a charge upon murder in the second degree is in favor of defendant and a matter of which he can not complain.

**4. Same—Charge Upon Circumstantial Evidence.**

On a trial for murder, where a witness testified that he saw defendant ride up and shoot deceased, the case was one of positive testimony, and did not require a charge upon circumstantial evidence, notwithstanding the next morning deceased was found a little distance from where he was shot and fell.

**5. Same—Principals—Conspiracy—Charge.**

On a trial for murder committed at night by a mob, where the evidence suggested a conspiracy, it was not necessary for the court to define the law of conspiracy where the charge given as to principals was sufficiently comprehensive.

**6.  Two Changes of Venue by the Court of Its Own Motion.**

The fact that the venue was changed by the court twice of its own motion, on sufficient grounds stated in its orders, will not constitute reversible error, no abuse of discretion by the judge being made to appear.

**7.  Same.**

The statute, article 613, Code of Criminal Procedure, authorizes the judge to change the venue on his own motion, leaves the matter entirely in the discretion of the judge, and is not a matter to be controverted by evidence.

**8.  Verdict—Misspelled Word.**

The misspelling of the word "penitentiary," to wit, spelling it "peintentiary," in a verdict of guilty in a felony case, is immaterial.  McGee v. State, 39 Texas Crim. Rep., 190.

**9.  Murder by Mob Violence—Title of Act—Constitutionality.**

The act of the special session of the Twenty-fifth Legislature, General Laws, page 40, to define and punish murder by mob violence, is not unconstitutional as embracing in its title more than one subject.

**10.  Same—Construction of Statute.**

The act of the special session of the Twenty-fifth Legislature, page 40, to define murder by mob violence, was not intended to create a new offense, but merely to give venue to other counties, in cases of murder by mob violence, than the county in which the murder was committed.

**11.  Same—Act to Define Murder by Mob Violence, Indefinite, Uncertain, of Doubtful Construction, Inoperative, and Void.**

The act of the special session of the Twenty-fifth Legislature, page 40, with regard to murder by mob violence, fails to define "mob violence" so that it can be determined what character of cases the act was intended to embrace, and the act is so indefinitely framed, of such doubtful construction, in fact so uncertain as to be incapable of intelligible construction, and must therefore be declared to be inoperative and void.  See opinion for a discussion in extenso of said act.

Appeal from the District Court of Hays, on change of venue from Gonzales.  Tried below before Hon. H. Teichmuller.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

This appeal is one of the closing chapters to a case which has figured most extensively in the courts of this State since Tuesday, the 19th day of September, 1876, when George Brassell and the deceased Philip Brassell, his father, were ruthlessly taken at night from their home in De Witt County and assassinated by a mob of twelve men. Seven parties were indicted jointly for the two murders in two separate indictments, to wit:  William Cox, Jake Ryan, Joe Sitterlee, William D. Meadows, Dave Augustine, James Hester, and Charles Heisig.  The venue of the original cases was first changed to Bexar County, where a trial was first had of Cox, Ryan, and Sitterlee on the indictment charging the murder of George Brassell.  The appeal from a conviction in that case, which is elaborately reported, will be found in 8 Texas Criminal Appeals, 254.  See also Ex Parte Cox, 12 Texas Crim. App., 665.  Suffice it to say, the indictments in the original cases were held fatally defective, and the prosecutions necessarily dismissed. New indictments were found, and it is only necessary to state that the new indictment against appellant Dave Augustine in this case, for the murder of Philip Brassell, was returned by the grand jury of De Witt County on the 31st day of December, 1891.

On June 21, 1893, the Hon. J. C. Wilson, special judge, announced his intention of changing the venue upon his own motion. Defendant was granted from 9 a. m. to 1 p. m. to oppose said contemplated order. Defendant on same day filed a plea excepting to the change of venue, offering to show that the grounds for the change as set out in the order of the court did not exist, and asked a reasonable time for that purpose. This plea was sworn to by Dave Augustine, defendant. On the same day the court ordered a change of venue to Gonzales County, Texas, and noted the exception of defendant thereto. The case was twice called for trial in Gonzales County, and on July 9, 1896, over objection of defendant duly noted in the order, the cause was, by special judge, Thomas McNeal, transferred by change of venue to Hays County, said order being made upon the motion of the court.

Defendants filed the same objections filed in De Witt, in Gonzales County, June 30, 1893, and likewise in Hays County on August 6, 1896. Said exceptions to change of venue were reserved and are incorporated in the transcript.

Defendant, in De Witt County, prior to the change of venue, entered a plea of former acquittal, consisting of a sworn plea containing all the requirements of law, in matter and form, a verified copy of the indictment under which the trial occurred, a verified copy of order for severance, verdict of acquittal, and judgment. This plea was also filed in Gonzales and Hays counties.

There was a trial in Hays County upon the merits under the indictment, and special plea of acquittal and plea of not guilty, the court having overruled the plea to jurisdiction based on the matters contained in the plea and exception to change of venue.

It was admitted by the State that Dave Augustine, the defendant, had been indicted and tried for the murder of George Brassell, and was acquitted of such charge. A preponderance of the evidence shows that George and Philip Brassell were taken from their home at night by a body of men; that they were killed while in the hands of said men, at the same place, within a few feet of each other, and almost simultaneously, but a second or two intervening between the shots. The jury returned a verdict finding defendant's special plea untrue, and further found defendant guilty of murder in the second degree, assessing his punishment at twenty-five years confinement in the "peintentiary." Judgment was rendered accordingly.

The evidence establishes the following uncontradicted facts:

In 1876, Philip Brassell with his family, consisting of wife, daughters, and three sons, George, Sylvester, and Theodore, resided in De Witt County, Texas, about two and one-half miles from the defendants. There had never been any trouble between the two families so far as the witnesses knew.

At that time there was a general state of lawlessness in that section of the State. There were two factions at constant war with each other, and each of them did a vast deal of killing, mostly by armed and dis-

guised mobs in the nighttime. One Bill Meadows (jointly indicted with the defendant) was the well known and recognized leader of the Sutton party. The defendant was never known, by persons well acquainted with both factions, to have been connected, or to have affiliated with either. His reputation was that of a hard-working, peaceable, law-abiding citizen. He stood as well as anyone.

On the evening of the killing, Jake Ryan, William Templeton, William Cox, and Joe Sitterlee were seen going in the general direction of where the defendant and the Brassells lived. About dark that evening an old negro saw two men, one of whom he took to be William Cox, close to David Augustine's house, riding along a public road; saw Augustine at his home at the same time. About 11 o'clock that night the inmates of the Brassell house were awakened by the barking of dogs and tramping of horses about the house, and parties calling upon them to get up and come' out. The men, Brassell and his three sons, were forced to dress and come out of the house, and were then placed under guard. Some of the men wore handkerchiefs about their neck. One pulled his handkerchief up about his face, as if to disguise himself. Only one came into the house, where were lights. Him they called "Mr. Sheriff." He was a large man, whom Mrs. Brassell said was Mr. Callaway, the deputy sheriff of De Witt County, but her daughter, the witness Mrs. Peck, said was Mr. Wiseger, the sheriff. The daughter, to be sure, took a light and held it up to his face and then saw that she was mistaken; that she did not know him. The mother contended it was Mr. Callaway until the next morning, when Mr. Callaway came and she had a talk with him; then she decided she was mistaken. The two ladies were acquainted with the sheriff and deputy.

The party declared themselves to be a sheriff's posse from Gonzales County in search of horse-thieves. After getting the old man and his three sons out of the house, they marched them ahead of them in the direction of one Ainsworth's, who lived about one-half mile from the defendant, saying they were going there and wanted the Brassells to show them the way. Some of the party were on horses and some on foot. It is claimed by members of the family that up to that time they recognized some one and some another, but altogether, Jake Ryan, William Cox, Joe Sitterlee, William Meadows, Jim Hester, and the defendant. That Meadows and Augustine walked just behind the Brassells as they marched away from the place. That when about 200 yards from the house they halted them, and Augustine and Meadows went back and got their horses from some one of the crowd who was leading them, and, mounting, rode up near the Brassells. Then some one of the crowd asked which was the youngest boy, and upon being told by Sylvester that he was the youngest, they told him to go back to the house. George then spoke up and said, "No, do not go; I know by your action you have brought us out here to kill us. If you kill one, kill all." The father also said, "Kill all if you kill any of us." George said, "If you are going to kill us, kill us right here. I am not going any further

You know the way to Ainsworth's as well as I do." George said, "We haven't done anything to be killed for." Then William Meadows said, "No, you haven't done anything but rob your neighbors," and he immediately shot George, and the man the witnesses say was Augustine shot the father, and then they all shot, and Theodore and Sylvester ran. One of them overtook Sylvester and he begged him not to kill him, and he asked him which one he was, and when told he was the youngest, he let him go. There were a great many shots fired. Then the crowd went off hallooing and shooting their pistols.

*Rud. Kleberg, A. B. Storey,* and *E. R. Kone,* for appellant.—The court erred in not setting aside the verdict, because the same was contrary to the evidence in finding that the defendant's plea of former acquittal was not true. Hozier v. State, 6 Texas Crim. App., 544; Lowe v. State, 4 Texas Crim. App., 34; Kain v. State, 16 Texas Crim. App., 306; Wright v. State, 17 Texas Crim. App., 158; Bill of Rights, sec. 14; Hirshfield v. State, 11 Texas Crim. App., 217; Wheelock v. State, 38 S. W. Rep., 182; 1 Bish. Crim. Law, 1051, 1052; Herera v. State, 34 S. W. Rep., 943.

The court erred in not granting a new trial because of its error upon charging the jury on murder in the second degree, there being no evidence to authorize such plea. State v. Punshon (Mo.), 27 S. W. Rep., 1111.

The court erred in not submitting defendant's special charge asked, to the effect that if the jury believed from the evidence that the killing of Philip and George Brassell was one and the same transaction, or if they had a reasonable doubt of its being one and the same transaction, that the defendant could not be again put upon trial for the killing of either of them; and that they should find in favor of defendant's plea of former acquittal.

The refusal to give the requested charge was fundamental error, because the main charge fails to instruct the jury that if they have a reasonable doubt whether the killing of Philip and George Brassell was one and the same transaction they must acquit, and under the facts of this case such a charge was demanded. If the evidence raises a reasonable doubt of the identity of the transactions, all other essentials being shown, the plea of jeopardy should be sustained.

The court erred in not charging on circumstantial evidence. 2 Thomp. on Trials, sec. 2505; Leftwitch v. State, 34 Texas Crim. Rep., 489.

The corpus delicti is not shown. Thompson v. State, 42 S. W. Rep., 974; Lucas v. State, 19 Texas Crim. App., 79; High v. State, 26 Texas Crim. App., 574; Lovelady v. State, 14 Texas Crim. App., 560.

The court erred in not giving a charge to the jury on the definition of conspiracy. Wills. Crim. Stats., Code Crim. Proc., art. 677, sec. 2337.

The court erred in not sustaining defendant's special motion except-

ing to the change of venue from De Witt County to Gonzales County, and from Gonzales County to Hays County, and the court especially erred in not sustaining defendant's motion against the jurisdiction of this court by reason of the order of the court of Gonzales County changing the venue of this case from said county to Hays, said court having no authority to make such order.

The order of the District Court of De Witt County changing the venue was an abuse of discretion confided to the trial judge, and was prejudicial to defendant.

The District Court of Gonzales County had no authority to change the venue to Hays because it had never acquired jurisdiction of the case, the District Court of De Witt County having never legally changed the venue to Gonzales.

The change of venue from Gonzales to Hays County was illegal because Hays was not an adjoining county to Gonzales and its courthouse not the nearest to Gonzales and no reason is assigned in the order why the venue was not changed to an adjoining county. Brown v. State, 6 Texas Crim. App., 310; Preston v. State, 4 Texas Crim. App., 191; Bohannon v. State, 14 Texas Crim. App., 271.

The District Court of Gonzales County had no authority to change the venue, because it acquired jurisdiction if at all on change of venue, and the authority to change venue lies only with the court in which the case was presented.

The District Court of Hays County had no jurisdiction of the case, and its judgment is a nullity because there was no proper change of venue.

The court erred in not granting the motion for a new trial, because the verdict of the jury was unintelligible and uncertain in failing to sufficiently find the place where the defendant should be confined, it confining him to some place not known to the law, by said jury in said verdict spelling "peintentiary."

The court erred in not granting said motion for a new trial, because it appears from the evidence upon the trial of the case that the defendant, if guilty at all, was guilty of mob violence as defined by the acts of the Legislature of June 19, 1897, defining mob violence and murder by mob, and under said act the District Court of Hays County had no jurisdiction to try this case.

The court erred in not granting said motion, because the defendant is not guilty of, or charged with any offense known to the law, because the evidence discloses the fact that the persons who killed Philip and George Brassell were guilty of the offense of murder, by mob violence, as defined in the Act of June 19, 1897, and under said act the prosecution could not be begun nor indictment found by a grand jury of De, Witt County, the county where the offense was alleged to have been committed. The indictment is therefore void, and no prosecution, judgment, or verdict can be had thereon.

The court erred in not granting said motion, because the evidence

showed that the defendant, if guilty at all, is guilty of the offense of murder by mob violence, and the indictment having been found by a grand jury of De Witt County, which was without authority of law to inquire into the offense and could not present an indictment therefor, that Hays County was without jurisdiction to try the defendant upon said indictment so found.

The law of murder as applicable to the case at bar was repealed by the Act of June 19, 1897, special session of the Legislature of Texas. Gen. Laws of Texas, Spec. Sess. 25th Leg., H. B. No. 30, chap. 13, p. 40; Harold v. State, 1 Texas Crim. App., 226; Holden v. State, 1 Texas Crim. App., 226; Bryan v. Sundberg, 5 Texas, 421; North Carolina v. Massy, 4 Law. Rep. Ann., p. 308. See this case for authorities bearing on this and the subsequent propositions hereunder.

The law under which defendant was indicted having been repealed, he can not now be tried for any offense. Wills. Crim. Law, title 1, art. 16; Hunt v. Jennings, 5 Blackf., 195; Commonwealth v. Duane, 1 Binn., 601; Abbott v. Commonwealth, 8 Watts, 217.

The Act of June 19, 1897, applies to cases arising prior to the passage, because there was no proviso in the act as to existing prosecutions, or restrictions or limitations to the operations of the statute. Wills. Crim. Law, title 1, art. 16.

Hays County had no jurisdiction of the case, because the indictment was returned by a grand jury of De Witt County, the county in which the killing occurred, and the original order changing venue through which the case was in Hays County, was made by the District Court of De Witt County. See sec. 2, title 13, p. 40, Pamphlet Law, 25th Leg., Spec. Sess.

Hays County had no jurisdiction, because there was no valid indictment.

Hays County had no jurisdiction, because the Act of June 19, 1897, while it neither increased nor ameliorated the punishment for the act charged against defendant, did positively and unequivocally provide the manner and place of procedure against the accused, and did not have any proviso in anywise restricting or limiting its operation, or exempting any cases from its operation. Sayles' Civ. Stats. 1897, Final Title, sec. 6, p. 1903; Paschal v. Perez, 7 Texas, 348; Hickox v. Tallman, 38 Barb., 608; Fales v. Wadsworth, 23 Me., 553; Sanders v. Greenstreet, 23 Kan., 425; Howard v. Moot, 64 N. Y., 262; Wood v. Byington, 3 Barb. Ch., 387; Heagy v. State, 85 Ind., 260; Ehle v. Brown, 31 Wis., 405; Meyer on Vested Rights, sec. 380, et seq.; People v. Livingston, 6 Wend., 526. See this case that new law governs as to procedure thereafter.

*Fly & Hill* and *Rob't A. John*, Assistant Attorney-General, for the State.—The facts in this case do not sustain the plea of former jeopardy. While on the former trial for the killing of George Brassell;

41st Crim. Rep.—5

proof of the killing of Philip Brassell could and may have been introduced, it was nòt necessary. This is the test. Wright v. State, 17 Texas Crim. App., 152; 52 Am. Rep., 295; 24 Am. Rep., 408. Even if the two cases were of the same transaction, under the principle of carving, while after conviction the plea might avail, after acquittal it could not.

The court did not err in charging on murder in the second degree, under the facts proved in the case.

Appellant can not be heard to complain that the court charged and the jury convicted of a less grade of offense than that of which he was guilty.

The change of venue to Gonzales County was not error. Cox v. State, 8 Texas Crim. App., 254.

Gonzales County, having acquired jurisdiction, had it for all purposes. No other court had any jurisdiction. Having full and exclusive jurisdiction, it possessed all the powers conferred by such jurisdiction. Having such jurisdictional powers it was authorized to change the venue, and such change by order of said court gave the District Court of Hays County full, explicit, and exclusive jurisdiction of the case.

The law of 1897, known as the "mob law," fails to define "mob violence," and is therefore inoperative and void. Compare articles 3, 6, and 10 of the Penal Code with French v. State, 14 Texas Crim. App., 76.

In describing the offense of which jurisdiction is sought to be regulated, the statute does not set out the offense in such language as will enable us to determine when the courts shall or shall not exercise jurisdiction. We now call attention to section 2 of the statute. This attempts to confer jurisdiction upon "any county in the judicial district except the one in which the offense is committed." It says such other county may have jurisdiction, not shall have. Even admitting that this confers jurisdiction on such other counties, does it take jurisdiction from the court on which it was before constitutionally conferred? The word except, we submit, is of too uncertain and ambiguous meaning to have this effect. Hence we conclude this statute does not take away the jurisdiction once granted. If it can have any effect it is only to give such other counties concurrent jurisdiction.

The District Court of De Witt County had jurisdiction, which it, in exercise of the proper powers, transferred to Gonzales County District Court, through which it was transferred to Hays County District Court, which had proceeded with the case before the enactment of the law of 1897; and has therefore the power to proceed in a case so pending before it. In construing a statute we must look to the intention of the Legislature. Can it be said that the Legislature intended to turn loose upon society all murderers who had been indicted where the facts show that "two or more" had combined to kill their fellow man? Was not that intention rather to make the punishment of murderers more certain? Let us be charitable even to Texas legislators.

We admit our Legislature has been guilty of many foolish things, but we can not believe them guilty of intentionally inflicting upon the State such untold injury and disgrace as would be involved in appellant's construction of this law. If such folly has been indulged in by the Legislature, public policy would demand that the courts, if necessary, when a proper case arises, should put a strained construction upon the law to avert this fearful evil. A strained construction is not necessary to hold that appellant's position is untenable in any case. But killing by "mob violence" is not charged in the indictment nor proven by the facts in this case, as will be found from the record. So appellant's contention, if correct in any case, is not applicable to this case.

For twenty-two years appellant has evaded justice. Now that he is overtaken, let justice have her deserts.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at twenty-five years confinement in the penitentiary, and he appeals.

Appellant was indicted in the District Court of De Witt County at the December term, 1891, for the murder of Philip Brassell, alleged to have been committed in said county on the 19th of September, 1876. In 1893 the venue of the case appears to have been changed from De Witt to Gonzales County. In July, 1896, the venue of the case was changed from Gonzales to Hays County, where the trial and conviction in this case subsequently occurred. The theory of the State, which was supported by evidence, shows that the killing was done at night, by a crowd of armed men who came to the house of deceased, masked, and took deceased and his three sons from their home, under the pretext of being shown the way to a neighbor's house. When they had proceeded a short distance from the house, deceased and his sons refused to go any further, and thereupon deceased and his oldest son were shot down. The two younger sons were permitted to escape. The State's testimony shows that there were ten or fifteen persons in the crowd. Several were identified; among others, defendant. The State's evidence also tends to show that defendant fired the shot which killed deceased, Philip Brassell. No special grudge was shown between defendant and deceased, but the homicide appears to have been committed on account of a feud existing between certain factions in De Witt County at the time; appellant and his companions being on one side, and deceased belonging to the other faction. Appellant relied on his plea of not guilty, under which he claims that the State's evidence failed to identify him as one of the parties composing the alleged mob, and he introduced evidence of an alibi.

Appellant's first proposition is that the court erred in not setting aside the verdict, because the same was contrary to the evidence, in finding that appellant's plea of former acquittal was not true. Appellant claimed that he was entitled to a verdict of not guilty on his plea of former jeopardy in that he had been previously tried and acquitted

for the same offense. By an examination of the record it appears that George Brassell was killed at or about the same time that Philip Brassell was, and by the same parties. The testimony tends to show that the shot which killed George Brassell was fired by another one of the party, and that the shot which killed deceased, Philip Brassell, was fired by appellant. The proof showed that appellant had been tried and acquitted of the murder of George Brassell; and it is claimed that, said acquittal being a part of the same transaction, his acquittal in that case of that homicide is an acquittal in this case, and is a good plea in bar. This contention might be urged with some force if the killing of both parties was done by one and the same act; that is, if the proof showed that but one shot was fired, and it caused the death of both Philip and George Brassell, then it might be a good plea in bar. But here the testimony shows that the parties were killed by distinct acts. Mr. Bishop says: "Obviously there is a difference between one volition and one transaction, and on the view of our combined authorities there is little room for denial that in one transaction a man may commit distinct offenses of assault or homicide upon different persons, and be separately punished for each." 1 Bish. New Crim. Law, sec. 1061; Rucker v. State, 7 Texas Crim. App., 549; Chivarrio v. State, 15 Texas Crim. App., 330; Forrest v. State, 13 Lea, 103; Clem v. State, 42 Ind., 420; Teat v. State, 53 Miss., 439.

Appellant complains that the court erred in refusing to give his special charges to the effect that, if the jury believed beyond a reasonable doubt from the evidence that the killing of Philip and George Brassell was one and the same transaction, the defendant having been acquitted on the charge of killing George Brassell, they should find in favor of defendant's plea of former acquittal. From what has been said before, we do not believe the court was required to give a charge on this subject at all, inasmuch as the proof showed that the killing of said two parties, although in the same transaction, was by two distinct acts. The court gave a charge based on the killing in one transaction in pursuance of a conspiracy, and instructed the jury, in effect, that if the defendant and several other persons conspired together, and agreed and planned the killing of Philip and George Brassell, and in pursuance of such plan and design they killed them, at the same time on the same occasion, such offense, although two persons were killed by two distinct persons, would be but one act, and but one transaction, and no person tried for the murder of either one of the parties is subject to a second prosecution and trial for the murder of the other party killed; "and if you find the facts to be such, you will return a verdict sustaining the special plea of defendant, although you may believe that Dave Augustine was one of the persons planning the offense, and that he actually killed Philip Brassell." And the court then instructed the jury the converse of said proposition,—that is, if Philip and George Brassell were killed at the same time, and by the same party, but not in pursuance of a previously planned conspiracy, the

killing of said parties would be distinct acts and separate offenses; and, if they found the killing occurred under such circumstances, to find against appellant's special plea. We do not think that in this matter the court announced a correct legal proposition; for, notwithstanding the conspiracy as planned by them, if the killing of two persons is by distinct and separate acts, though done at the same time, and as a part of the same transaction, the acquittal for the killing of one of said parties is not a bar to a prosecution for the killing of the other. The conspiracy has nothing to do with it, for two persons were killed by distinct and separate acts, as we have seen above. The charge of the court, however, could not have prejudiced appellant, because the jury were instructed to acquit him on the special plea if they found that the killing was in pursuance of a previously planned conspiracy. They evidently found, if they obeyed the charge of the court, that there was no previous conspiracy. That, however, as we have seen, would be no defense, and whether or not their finding is sustained by the proof makes no difference.

Appellant contends that the court erred in charging the jury on murder in the second degree, on the ground that there was no evidence to authorize such a charge. We are referred to no authority in this State, but to a Missouri authority,—State v. Punshon (Missouri Supreme), 27 Southwestern Reporter, 1111. We do not understand said case to support the contention of appellant. It holds that when the evidence shows that defendant, if guilty, is guilty of murder in the first degree, and defendant requests an instruction that the jury shall find defendant not guilty, unless they believe he willfully and with malice aforethought shot deceased, it is not error to modify such instructions to the effect that the jury shall find him "not guilty of murder in the first degree." But, whatever may be the doctrine in Missouri, we do not think it is the doctrine in this State. The two degrees of murder are so closely allied, the dividing line sometimes being of such a shadowy character, that it has been held that it is best in every case to charge murder in both degrees. Of course, where the case stands out in relief as murder in the first degree, the court will be justified in charging only murder in the first degree; but even in such a case the court should charge murder in the second degree. We fail to see how appellant could complain, as the charge would be in his favor. Blake v. State, 3 Texas Crim. App., 581; Powell v. State, 5 Texas Crim. App., 234; Jones v. State, 29 Texas Crim. App., 338; Fuller v. State, 30 Texas Crim. App., 559.

The failure of the court to charge on circumstantial evidence was not error, inasmuch as the evidence showing the killing of Philip Brassell, and appellant's participancy therein, was by positive testimony. Sylvanus Brassell testified that he saw appellant when he rode up from the south and shot his father, while he was looking at one Meadows, a codefendant; that his father was just in the act of falling when he turned to leave. Now, the fact that Philip Brassell was found the

next morning, a little distance from where he was shot and fell, makes no difference; nor does it make any difference that he was afterwards shot by others of the party. He was killed by distinct and separate shots from those which killed George, as the same witness, Sylvanus Brassell, testified to seeing Meadows shoot George Brassell about the time his father was shot by defendant. This, it occurs to us, was positive evidence of the homicide, and did not require a charge on circumstantial evidence.

Appellant further assigns as error that the court erred in not defining the law of conspiracy. While, undoubtedly, the evidence suggested a conspiracy, yet it was not necessary for the court to define this matter. The charge given on principals was sufficiently comprehensive.

Appellant complains of the action of the court in changing the venue from De Witt to Gonzales County; and also in changing the venue from Gonzales to Hays County; and exception appears to have been reserved in the order changing the venue. The venue was changed on the court's own motion, and on sufficient grounds, as stated in the order. There does not appear to us any abuse in the discretion of the judge in this regard. Art. 613, Code Crim. Proc. There appears a separate motion in the record in connection with the change of venue from De Witt to Gonzales County, controverting the grounds assigned by the court for the change of venue, and asking to submit proof; but this is not embodied in any bill of exceptions,—that is, no bill of exceptions shows that the court refused to receive proof on this issue. · But we take it that the statute authorizing the judge to change the venue on his own motion leaves this matter entirely within the discretion of the judge, and is not a matter to be controverted by evidence. Of course, if a clear case of oppression prejudicial to the rights of appellant was presented by affidavits, or proof offered setting up this character of case, and a proper bill of exceptions was reserved to the action of the court, we are not prepared to say that this court would not revise an improper and oppressive action of the lower court. As was said in Bohannon's Case, 14 Texas Criminal Appeals, 271: "The discretion conferred upon district judges by the article in question is not restricted or controlled by article 618, and whether such discretionary authority is a dangerous power is not a question for judicial determination. No instance of its abuse has ever been made manifest." The exercise of this power to change the venue from Gonzales to Hays County was as much authorized by article 613 as the original change of venue, and what we have said heretofore relates as well to the latter change as to the former.

It is not necessary to discuss the objection to the verdict of the jury on the ground that "penitentiary" is spelled in the verdict as follows: "peintentiary." See McGee v. State, 39 Texas Crim. Rep., 190.

Appellant contends that the evidence discloses that this was a murder by mob violence. In that connection he insists that the Act of the Twenty-fifth Legislature (General Laws, Special Session, Twenty-fifth

Legislature, page 40) carves out and defines a distinct offense, to wit, murder by mob violence; and that all prosecutions for said offense, as provided by the first section of said act, can not be commenced and prosecuted in the county where such offense may have been committed, but must be commenced and prosecuted in some other county; that the act, by its express terms, repeals all acts in conflict therewith, and contains no saving clause with reference to prosecutions existing at the time it went into effect. It is accordingly insisted that it applies to this prosecution, which was commenced in the county of De Witt, where the alleged offense was committed. He further contends that the act is not unconstitutional on account of its caption. We concede the constitutionality of the act in question, so far as its caption is concerned,—that is, that "An act to define and punish murder by mob violence; to fix the venue and regulate proceedings in such cases; and to provide for the suspension and removal of sheriffs," etc., "who permit it, and fix the venue and regulate proceedings in such cases,"—is not unconstitutional as embracing more than one subject. See Fahey v. State, 27 Texas Crim. App., 146; Albrecht v. State, 8 Texas Crim. App., 216. We do not believe that the object of the act in question was to create a new offense of murder. For a mob to execute a person was formerly murder under our statutes defining that offense, and it is none the less so under the new act. By reference to the act itself, an analysis of sections 1 and 2 will show that it was not the intention of the lawmakers to create a new offense, but merely to give venue to a certain character of murder, to wit, murder by mob violence. This sort of murder is punishable the same as murder formerly was under our statutes, to wit, death or confinement in the penitentiary for life, or according to the degree of murder. The indictment must set out an accusation of murder, and the jury must find the degree of murder, in order to mete out the punishment. This is further manifest by the last clause of section 1 of the statute, which leaves the law of manslaughter unaffected; that is, we take it that, although murder be committed by a mob, if the party committing it do so in the heat of passion, superinduced by adequate cause, as defined by law, such person may be convicted, under the indictment, of only manslaughter. The second section of the law in question provides that prosecutions for murder under this act may be commenced and carried on in any county in the judicial district in which the offense is committed, except the county of the offense, etc. The indictment, as we understand it, must charge a murder, and then charge that it was done under circumstances to constitute it a murder by mob violence, in order to be a good indictment; and when an indictment is drawn in such case, according to the terms of the statute, if it is presented in the county where the offense was committed, it will be dismissed for want of jurisdiction. If a homicide is committed in a county under circumstances which constitute it murder by mob violence, and a party is indicted for murder merely, without the recitations constituting it murder by mob violence, yet, if it

is shown in proof that the homicide was committed under circumstances to constitute it murder by mob violence, the prosecution equally can not be maintained, but must be begun in the proper county. So we take it that the aim and purpose of the statute were not to create a new offense, but to give venue to cases of murder committed under certain circumstances to other counties than the one where such homicide was committed.

This brings us to the question, what is murder by mob violence? that is, what did the Legislature mean by "mob violence," and what character or kind of murder did they intend should not be prosecuted in the county where it was committed, but in some other county? This matter was somewhat discussed in Alexander v. State, 40 Texas Criminal Reports, 395. The exact point decided in that case was that, where two or more persons, out of some private grudge, conspire to kill another, and in pursuance of such purpose do kill him, that it is not a murder by mob violence, as contemplated by the statute of 1897. But we therein indicated that the terms of said statute on mob violence, as construed, were intended to include only cases in which a mob should take from the custody of some officer one accused of crime, or possibly one charged with crime, or who had committed a crime, though not under arrest, and execute him by violence. In discussing our views restricting the act in question within such bounds, we referred to the history of the times which superinduced the act, and we also appealed to the message of the Governor which accompanied the act. We have since followed the act through the journals in all its details to its final consummation as the completed will of the Legislature, and we are constrained to change our views as heretofore expressed. We take it to be a rule of construction in the interpretation of laws, where the statute is ambiguous, or susceptible of several different constructions, it is competent for the courts to study the history of the bill in its progress through the Legislature by appealing to the legislative journals. Black, Interp. Laws, sec. 91; Endl. Interp. Stats., sec. 31. The act in question originated in the house. The Governor sent a special message to the house, accompanying the same with a prepared bill on the subject. Said bill was reported favorably by the committee. The first section thereof related to rapes. This was subsequently stricken out, and the sections of the bill were rearranged, the second section becoming the first section. Said section is as follows: "Every person with sound memory and discretion, who shall kill any reasonable creature in being in this State, or participte in such killing, or aid in any manner therein, when the person so killed is accused of crime, or is in the custody of the officers of the law, or is taken therefrom by violence, shall be deemed guilty of murder by mob violence," etc. This bill, with this provision, passed the house, and went to the senate. It was reported favorably to that body by the committee. When it came before the senate, it was amended by the following substitute for section 1, to wit: "Section 1. Whenever two or more persons shall combine

together for the purpose of mob violence, and in pursuance of such com-
bination shall unlawfully and willfully take the life of any reasonable
creature in being, by such violence, such person shall be deemed guilty
of murder by mob violence, and upon conviction thereof, shall be pun-
ished," etc. Senate Journal, 25th Leg., Spec. Sess., pp. 119, 120. Two
attempts were subsequently made in the senate to amend said section
by confining the operation of the act to cases where the person killed is
accused of crime, or is in the custody of the officers of the law; but these
amendments were defeated. Id., pp. 120, 121. So it will be seen that
the senate distinctly repudiated that provision of the house bill which
sought to confine the operation of the act to cases where a mob executed
some person charged with crime, or in custody of the officers of the law
under a charge of crime. The bill, as thus amended, passed the senate,
and was sent back to the house, by which body, in its amended shape,
it was passed, received the Governor's approval, and became a law.
So it would seem that we are driven to the irresistible conclusion that
the Legislature not only did not intend to confine the acts of mob
violence to the execution by mobs of persons accused of crimes, or to
the rescuing of persons accused of crime from officers and their execu-
tion, but intended to give the act in its operation a greater latitude; and
we understand it to be insisted that the act in question embraces every
case of murder by mob violence, and that every murder committed by
two or more persons, who have combined together for the purpose of
mob violence, and in pursuance of such purpose shall willfully take
the life of some other person, that every such case can no longer be
prosecuted in the county where it occurred, but must be prosecuted
in some one of the counties named. We are thus confronted with the
question, what did the Legislature mean when it used the term "murder
by mob violence?" If it intended to change our law in respect to venue
in murder cases, and to authorize the prosecution in such cases where
two or more persons combine together beforehand to kill a person, or
do some serious bodily violence the natural consequence of which would
likely produce death, and in pursuance of such purpose do kill him,
to be carried on in some other county than the county of the offense,
then it would work a radical change in our law, and would be productive
of a great deal of confusion. Still, if this is the plain reading of the
enactment, we understand it to be our duty in administering the law
to carry out the legislative intent, no matter what complications might
arise. Suth. on Stat. Const., secs. 321, 324; Black, Interp. Laws, p.
105; Endl., Interp. Stats., sec. 266. On the other hand, a statute must
be capable of intelligible construction and interpretation, otherwise it
will be inoperative and void. "The court must use every authorized
means to ascertain and give it an intelligible meaning; but if, after
such effort, it is found to be impossible to solve the doubt and dispel
the obscurity, and if no judicial certainty can be settled upon as to the
meaning, the court is not at liberty to explain or make one. The court
may not allow conjectural interpretation to usurp the place of judicial

exposition. There must be a competent and efficient expression of the legislative will. * * * If the terms in which a statute is couched be so vague as to convey no definite meaning to those whose duty it is to execute it, either ministerially or judicially, it is necessarily inoperative. The law must remain as it was, unless that which professes to change it be itself intelligible." Black, Interp. Laws, p. 75, sec. 36. In consonance with these general views as to the interpretation of statutes, our Constitution provides that every indictment must state the nature of the accusation against a defendant, and it has been held that a statute violative of its provisions is inoperative and void. And again, our Penal Code, article 6, provides: "Whenever it appears that the provision of the penal law is so indefinitely framed or of such doubtful construction that it can not be understood, either from the language in which it is expressed or from some other written law of the State, such penal law shall be regarded as wholly inoperative." And see also Penal Code, arts. 7, 9.

Now, the question occurs, is this law, authorizing a change of venue in all cases of murder by mob violence, plain and intelligible on its face, or is it framed so indefinitely and in such doubtful language that, judged by itself, or in connection with other laws, it appears ambiguous on its face, and to lead to results never contemplated by the Legislature? The act uses the term "mob violence," and we have searched the books in vain to find where this combination of words has ever been defined. If we transpose the words and say that mob violence means violence by a mob, and that this in turn means some physical injury by a mob, then we are equally at a loss to differentiate a violence committed by a mob or by a person. The character of injury would be the same, whether committed by one or more persons. If we say that the Legislature intended to take the prosecution away from the home county in every case where two or more persons plan to do another a physical injury, and in pursuance of such purpose willfully kill such person, it would embrace a multitude of cases, evidently never contemplated by that body. Such was not within the evil intended to be provided against. In line with this view, the statute itself is in derogation of common right; for it is traditional with our government, and all our laws with reference to venue are founded upon the idea, that it is the privilege of every citizen to be tried in the vicinage—that is, the county— where the offense was committed, by a jury of his peers. This act, if given the latitude claimed for it, would change this rule in a great number of murder cases; so that, under its operation, in every case of homicide where the proof showed that it was done by two or more persons in pursuance of a plan formed beforehand, the citizen could no longer be prosecuted in his home county, but ex necessitate must be carried to some other county for trial. As stated before, it might be competent for the Legislature to do this; but, before we would be willing to ingraft such a rule of construction, the intention of the lawmaking power intending this result should very clearly appear.

We mention this because, when a law is framed in indefinite or uncertain terms, we are authorized to appeal to all the rules of construction in order to see whether or not it is in such condition as to be enforced. We have seen before that the Legislature refused to pass the law confining the provisions of the act to the murder by mobs of persons accused of crime. They repudiated this view, and substituted another provision. But the question is, where did they intend to stop? They refused to define what "mob violence" should consist of, but left this term of uncertain meaning, for the courts to define, and say to what character of cases this question of venue should apply. The books define a mob as an assemblage of many people acting in a tumultuous and riotous manner, calculated to put good citizens in fear and in danger of their persons and property. In common acceptation it is an unorganized assemblage, a disorderly crowd, etc. See Rap. & L. Law Dict.; 15 Am. and Eng. Enc. of Law, 698. This act, instead of considering a mob as a multitude without organization, makes a mob consist of as few as two persons, and apprehends some sort of organization, for the language of the act is, "if two or more persons combine." In both respects the act is a departure from the ordinary definition of a mob. The purpose of the mob, as we have seen, must be to do some injury or violence to another; and if, in pursuance of such purpose, they kill such person, whether they intend such result or not, the act denounces such persons as guilty of murder by mob violence. To illustrate, under this latitude of construction, if two or more persons from any motive combine to merely whip a person, and in pursuance of such whipping they willfully kill such person, though not intending this result, the provisions of the act apply, and the parties can not be prosecuted where it occurred. Under the general provisions of our law, such persons might be guilty only of manslaughter; but the act exempts from its operation the offense of manslaughter. And again, if the parties, or some of them, combine together to kill some other on account of an insult to a female relative, and in pursuance thereof take the life of such person, the persons actuated by such motive, under our statutes, might be guilty of only manslaughter, and, being exempted from the provisions of the act, must be prosecuted in the home county, and not in one of the other counties named. So we see that in giving effect to the provisions of said act, with this latitude of construction, we are met with difficulties and complications. If the act is held to apply to every homicide committed by two or more persons in pursuance of some previous combination, then the venue of every such case is no longer in the home county, but the prosecution must be begun and maintained in some of the adjoining counties named. If, on the trial, proof of combination or conspiracy should fail, then the prosecution in that county can not be maintained. Indeed, the question of venue would ramify our whole law of homicide, and produce inextricable confusion. While, as we have seen, the Legislature refused to restrict the operation of the act to the killing

of a person in the hands of an officer, or accused of crime, and failed to place any other limitation on the act, yet we can not believe that they intended to give it the scope claimed for it. As we have seen, the act is not complete within itself, but we are required to appeal to another law, to wit, the law of murder, in order to explain and give it force; but the law of murder furnishes no light as to what the Legislature intended by mob violence, and we appeal to all other laws on our statute books in vain to ascertain what the Legislature meant by the term "mob violence." To hold that the act was intended to embrace every killing by two or more persons in pursuance of a previously formed design to kill, or to inflict some injury which resulted in killing, would lead to grave results, evidently never intended by the Legislature, calculated to produce complications and confusions, and which, while remedying no evil, would destroy rights, and create vexations and oppressions. The effect would be, not only to harass the citizen by requiring him to be prosecuted in some other county than where the offense was committed, in a great number of cases evidently never contemplated by the Legislature, but would impair the efficiency of the law and the administration of justice in the courts, if we gave it such latitude of construction as is here claimed. As presented, we believe that the act in question is so indefinitely framed, and is of such doubtful construction, that it can not be understood, either from the language in which it is expressed or from any written law of this State. We have given this question much thought and study, and we confess to being unable to solve the difficulty, and to determine what the Legislature really meant by the term "mob violence," or what character of cases they intended the act should embrace. It is so uncertain in its terms as to escape intelligible construction, and we therefore declare it inoperative and void. Now, if this be a correct interpretation of the law, it settles this case, and it is not necessary for us to discuss whether or not, if the act was operative, it would be retroactive, and render nugatory all prosecutions against mobs for murder begun before the passage of the act in question. There being no error in the record, the judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for a rehearing was overruled without a written opinion.—Reporter.]