### JIM MILLER v. THE STATE.

No. 2257. Decided June 8, 1902.

**1—Keeping Open Saloon on Election Day—Information.**

An information for keeping open a saloon in precinct No. 1, on the day of an election to determine the question of issuance of bonds by a city for school purposes, is valid, and it was not necessary to designate the precinct as justice's, election or commissioner's precinct.

**2.—Same—Amendment to Charter.**

On a trial for keeping open a saloon on election day, where the defense was that the saloon was not embraced within the limits of the city as defined in an amendment to the original city charter; Held, that the purported amendment being so indefinite, uncertain and meaningless as to its provisions regarding the boundaries therein set forth, was invalid and could not operate to repeal the original charter as to the locus in quo, and that under the original charter, which was still in force and unrepealed, defendant's saloon was within the city limits and he was liable under the law inhibiting him from opening his saloon on election day.

**3.—Same—Election to Levy a Tax—How Ordered—City Ordinance—Evidence.**

An election to levy a tax for public school purposes, to be valid, must have been ordered, where such is the mode prescribed, under a city ordinance duly passed for that purpose by the city council, and, where the same appeared to have been ordered by a resolution and not by an ordinance, it was error to admit in evidence the said resolution over defendant's objection. Following Waco v. Prather, 35 S. W. Rep., 958.

**4.—Same.**

Where the mode by which a city is alone authorized to do a certain thing is prescribed, that mode must be pursued; and where the mode prescribed is by ordinance, in the absence of such ordinance, there could be no valid election for levying a tax or issuing bonds for public school purposes.

Appeal from the County Court of McLennan. Tried below before Hon. G. B. Gerald, County Judge.

Appeal from a conviction of keeping a saloon open on election day; penalty, a fine of $100.

The opinion states the case.

*Henry & Stribling* and *Clark & Bolinger,* for appellant.

*V. L. Brooks, Allan D. Sandford,* and *Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of keeping open his place of business, a saloon, in the city of Waco, on an election day; and his punishment assessed at a fine of $100; hence this appeal.

Appellant excepted to the complaint and information on the ground that the same alleged that the election was for the purpose of determining whether or not the city of Waco should issue certain bonds for school purposes, whereas the law only authorized an election for public school purposes   He also excepted to the complaint and information because they failed to set forth what kind of precinct it was in which the election was held, whether it was a justice's precinct, election precinct, or commissioner's precinct; the allegation being simply that it was in precinct number 1 in McLennan County, Texas.   There, is nothing in either of these contentions.

Appellant further complains of the action of the court in refusing to give certain special requested instructions, which in effect told the jury that if they believed from the evidence that the limits of the city of Waco, as defined by the Act of May 12, 1899, did not include a portion of said city west of the Brazos River, and did not include the place of business of the defendant, then the jury should acquit.   And in this connection appellant further contends, that the evidence shows the alleged violation did not occur within the limits of the city of Waco,—the claim being that the amended Act of 1899 marked the boundaries of said city, and that the same showed that the city was exclusively on the east bank of the Brazos River, and did not include any part of the city as formerly situated on the west bank, under the Act of 1889, and that the verdict of the jury and judgment of the court could not be sustained, because of the insufficiency of the testimony.   The amended Act of 1899 is of section 1, of the original Charter Act of 1889.   We here set forth section 1 of the original act, and also of the amended act, as follows:   Act of 1889: "Section 1.   Be it enacted by the Legislature of the State of Texas, that all that district of country contained within the following limits be and he same is hereby created into a city to be known as the city of Waco, to wit: In McLennan County; beginning at the intersection of the south bank of Waco Creek with the west bank of the Brazos River; thence up said Waco Creek with its south bank to a point one hundred and sixty-five feet north, forty-five degrees east from the east line of River Street extended; thence south forty-five degrees east to a point south line of the S. A. Owens tract of land now owned by James I. Moore, and the north line of the Mary A. Blocker tract; thence south forty-five degrees west with the said Blocker north line to a point one hundred and sixty-five feet north forty-five degrees east from the east line of Second Street extended; thence south forty-five degrees east to a point north forty-five degrees east from the southeast corner of the Oakwood Cemetery tract; thence south forty-five degrees west to a point fifty feet south forty-five degrees west from the southwest corner of said Oakwood Cemetery tract; thence north forty-five degrees west along the west line of a

reservation made by Mary A.Blocker in her deed to the Mechanical, Agricultural and Industrial Association of 1874—said deed recorded in book T, page 574, deed records of McLennan County,—to the south line of R. S. Blount relocation survey in the south line of Bagby's addition, which is also the north line of J. M. Thompson; thence along the south line of R. S. Blount survey south forty-five degrees west to a point in the west line of the old city limits; thence north forty-five degrees west to a point one hundred and sixty-five feet south forty-five degrees east from the south line of Speight Street; thence south forty-five degrees west one hundred and sixty-five feet south forty-five degrees east from south line of Speight Street to a point one hundred and sixty-five feet south forty-five degrees west from west line of Twenty-second Street extended as shown in the Linkenhoger addition; thence north forty-five degrees west one hundred and sixty-five feet south forty-five degrees west from said west line of Twenty-second Street to a point in south line of the W. M. Erath tract; thence north sixteen degrees thirty minutes west to south line of the driving park tract, continuing same course five hundred feet beyond the said driving park south line to stake for northwest corner of this; thence north sixty degrees east to a point in the center of Wilson or Lindset Hollow Branch; thence down said branch to Brazos River; thence north sixty degrees east across said Brazos River to its east bank; thence down said river on its east bank one thousand feet to a stake for corner; thence north eighty-seven degrees thirty minutes east to a point in the east line of the Hood six hundred and forty acres tract; thence south twenty-eight degrees east with the said east line of the Hood six hundred and forty acre tract to the south line of the right of way of the Missouri Pacific Railroad; thence south forty-five degrees west with said south line of the Missouri Pacific Railroad to east bank of the Brazos River; thence down said Brazos River on its east bank to a point opposite the beginning; thence across said river to the place of beginning." Acts 21st Leg., 1889, p. 146.

Acts of 1899: "An act to amend an act to be entitled an act to incorporate the city of Waco, and to define its boundaries and powers, approved February 19, 1899.

"Section 1. Be it enacted by the Legislature of the State of Texas, that section 1 of the above recited act be, and the same is hereby amended so that the same shall hereafter read as follows:

"Section 1. That all that district of country contained within the following limits be, and the same is hereby created into a city, to be known and styled as the city of Waco, to wit, in McLennan County; beginning at the intersection of the south bank of Waco Creek with the west bank of the Brazos River; thence with the said Hood east line south twenty-eight degrees east to the northwest line of Elm Street; thence south seventy-four degrees east to the west corner of the East Waco Cemetery; thence south twenty-eight degrees east with east line of said cemetery to the north line of the right of way of the St. Louis

Southwestern Railroad; thence north fifty-five degrees east with the north line of said right of way one hundred and twenty-five feet; thence south twenty-eight degrees east, crossing said St. Louis Southwestern Railroad and the Missouri, Kansas & Texas Railroad and along the east line of the R. G. Wright ten acres tract of land to the north line of League Avenue, as set out in subdivision of fractions E and F of the Thomas de la Vega eleven league grant, as recorded on page seventeen, volume one hundred and eleven, of McLennan County deed records; thence south sixty-five degrees west, with the north line of League Avenue to the west line of De la Vega Street of said subdivision; thence south thirty degrees east with west line of said De la Vega Street to the north line of Calhoun Street, in Riverside addition at Waco; thence south forty-five degrees west with north line of said Calhoun Street to the east bank of the Brazos River; thence down the east bank of the Brazos River with its meanders to a point opposite south bank of Waco Creek; thence south forty-five degrees west to the place of beginning.

"Section 2. That this act shall take effect from and after its passage, and all laws in conflict herewith are hereby repealed. It being important that the city of Waco should immediately have the benefit conferred by this act, in order to extend its authority over the territory added to its corporate limits, an emergency is created that this act take effect and be in force from and after its passage, and it is so enacted." See Acts 26th Leg., Spec. Laws, p. 178.

It may be conceded, because there is no controversy as to the evidence on this point, that the city of Waco was authorized to hold an election to determine whether or not it would issue bonds for public school purposes. And it may also be conceded that the saloon which is alleged to have been kept open on said election day, being the 6th of July, 1900, was situated on the west bank of the Brazos River, within the city limits of Waco, as defined in section 1 of the Act of 1889; said saloon being on Franklin Street, between Fourth and Fifth streets. It may also be conceded that the amended Act of 1899, being an amendment of section 1 of the Act of 1889, if it is complete within itself and marks out and establishes certain boundaries, excluding the locus in quo of the alleged offense, then those boundaries constitute the city of Waco; and if said offense was not committed within said boundaries, appellant was wrongfully convicted and the case must be reversed. The testimony of one witness shows that the territory set out and described in said Act of 1899 does not include any territory in the city of Waco on the west side of the Brazos River; all of the territory therein described is on the east side of the Brazos River.

Our Constitution provides: "No law shall be revived or amended by reference to its title, but in such case the act revived, or the section or sections amended shall be re-enacted and published at length." Art. 3, sec. 36, Constitution. And see Suth. on Stat. Con., secs. 130, 132. And it has been held that the re-enactment of a section, leaving out a

clause, is a repeal of such omitted clause. State v. Andrews, 20 Texas, 230.

Now, in looking at the amended Act of 1899, it is apparent it was not the intention of the Legislature to destroy or take from the city of Waco, but to add to the city limits. This is manifested from the first section of the amendment, where it calls for the beginning point, thence to run "with the *said* Hood east line," evidencing something should have gone before. And again, the second section shows, by express averment, that the object of the enactment was "in order to extend its authority over the territory *added* to its corporate limits." Where an act is ambiguous on its face, and requires interpretation, we are authorized to ascertain the intention of the Legislature; and there is no question here that the amendment is not only ambiguous and confused, and, as we shall presently see, is without form and meaningless when taken by itself. Both the original section and the amended section are in evidence in this case, and by referring to both, as we are authorized to do, we see that Waco as it was bounded by the Act of 1889, was situated both on the west bank and on the east bank of the Brazos River, the greater portion of said city being on the west bank. Looking at the boundaries in the amended act, we see that the beginning call for the city is on the west bank of the river "at the intersection of the south bank of Waco Creek with the west bank of the Brazos River;" and the next call is, "thence with the *said Hood east line,* south twenty-eight degrees east to the northwest line of Elm Street." Here, if we take course and distance call, we will not cross the river to the east bank at all, but, in order to get to Hood's east line, we find in the original charter that it is called for on the east side of the river. So, in order to get to it, we are required not only to disregard the call for course and distance, but cross the Brazos River and then find some point on Hood east line (one point will do as well as another), which we can only do by appealing to the former charter; and then, if we proceed to follow the calls in the amendment to the closing point, that is, the beginning point on the west bank of the river, we will inevitably cross the line made in going from the beginning point on the west bank of the river to a point in the east line of Hood's survey. We undertake to say that no surveyor can take the calls in the amendment alone and close the survey according to any known rules; and if we appeal to the survey, as contained in the original charter, to find "Hood east line," we will not then be able to make an intelligible survey closing the lines. We only know from the calls in the amendment that certain calls have been omitted which were evidently intended to be included. What these omitted calls were, if we do not appeal to the original boundaries, is a mere matter of conjecture; but certainly, taking the calls in the amended survey they are without meaning and do not of themselves embrace any given territory. We therefore feel constrained to reject the amended act as meaningless and void; not only because it does not embrace the territory evidently intended to be embraced by the Legislature, as indicating the limits of Waco as it originally stood, with the territory added thereto, but

also because, as construed by itself, it does not embrace any given terri-
tory. We therefore reject the amendment as void. Augustine v. State,
41 Texas Crim. Rep., 59; Suth. on Stat. Const., 261, and authorities
cited; Endl. on Interp. of Stats., 195; Billingsley v. Harvey, 6 Cal., 381.
It follows, therefore, that the attempted amendment does not supersede
and repeal section 1 of the original act; and the offense having been
committed within the boundaries of Waco, as originally defined, appel-
lant was amenable to the law, which inhibited him from opening his
saloon on an election day.

However appellant contends that there was no legal election in the city
of Waco on the day alleged, because he says no ordinance authorizing an
election for public school purposes passed by the city council was intro-
duced in evidence; that the only semblance of authority for said election
was a resolution which was introduced in evidence, over his objections,
read from the minutes of said city council. Said resolution reads as fol-
lows: "June 6, 1901. A resolution providing for an election to be held
in the city of Waco on July 6, 1901, to determine as to the issuance of
$60,000 bonds for school purposes, was submitted by Alderman Hamil-
ton; a motion by Alderman Deaton that the resolution be adopted was
carried by the following vote: Ayes—Thompson, Gillespie, Hamilton,
Deaton and Wallace. Nays—Alexander, Woodall, Hoffman and Rich-
ards." The objection urged being, that said record does not show the
original resolution passed by the city council ordering said election or a
certified copy thereof, but constitutes merely a minute entry upon the
minute book of the city council, which was not legitimate evidence, and
furnished no authority for holding said election. The bill of exceptions
is a little vague, but we take it that it sufficiently presents the question
as to whether the city of Waco could act in the matter of holding an elec-
tion to issue bonds for school purposes, by virtue of a mere resolution,
which, in itself is informal; or was it required to act under an ordinance
regularly passed by the mayor and board of aldermen? It will be seen
from the charter of 1899 that the city of Waco is constituted into a sep-
arate school dictrict (sec. 48); and it has power to levy a tax for public
school purposes. Secs. 23, 26 and 36 of charter; and also arts. 486, 4034
Rev. Stats.; and also see Acts 27th Leg., 1901, p. 66. A reference to all
these sections shows that in the levy of a tax by virtue of an election it
must be done under an ordinance duly passed for that purpose; and it is
a general rule that where a mode is prescribed by which the city is
authorized to do a certain thing, that mode must be pursued. 2 Dillon
on Mun. Cor., sec. 769; City of Bryan v. Page, 51 Texas 532. In the
city of Waco v. Prather, 35 S. W. Rep., 958, almost this identical ques-
tion came before the Court of Civil Appeals for the Third Supreme Judi-
cial District. The question in that case was the authority of the city
government to levy a tax for the improvement of the streets; and, instead
of an ordinance, a resolution of the city council, as in this case, was
offered in evidence; and in addition an ordinance ratifying the tax was
introduced. But it was held that this did not authorize the levy. We

accordingly-hold that the court acted improperly in admitting the said resolution in evidence. The city of Waco, in a matter of this sort, could only act by ordinance; and in the absence of an ordinance authorizing an election for the purpose of levying a tax and issuing bonds for public school purposes, there could be no valid election. Reuter v. State, 43 Texas Crim. Rep., 572.

The judgment is accordingly reversed and the cause remanded.

*Reversed and remanded.*